F I L E D
United States Court of Appeals
Tenth Circuit

DEC 12 1997

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

JOSEPH ROBERT SAAVEDRA,

Petitioner-Appellant,

v.

JOHN THOMAS, Warden;
ATTORNEY GENERAL OF THE
STATE OF NEW MEXICO,

Respondents-Appellees.

No. 96-2113
(D.C. N.M.)
(No. CIV-94-170-JP)

ORDER AND JUDGMENT[*]

Before BRISCOE, McKAY, and LUCERO, Circuit Judges.

Joseph Robert Saavedra appeals the denial of his 28 U.S.C. § 2254 petition.

We affirm.

**I.**

Saavedra was convicted of two counts of armed robbery, two counts of

conspiracy to commit armed robbery, and aggravated assault. These charges

stemmed from the August 31, 1988, robberies of Roger Ward at Allsup's Store

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

and Edna Maes at Rio Grande Oil. His codefendant, Oracio Mares, entered into a plea agreement and testified for the prosecution at Saavedra's trial. Saavedra's convictions were affirmed on direct appeal to the state court. Two habeas petitions in state court were denied. Saavedra filed his federal § 2254 petition on February 16, 1994. The district court denied one claim on June 12, 1995, and then denied the remaining claims on April 22, 1996.

## II.

On appeal, Saavedra contends the prosecutor engaged in misconduct that violated his due process rights, that he was denied effective assistance of counsel, that the trial court engaged in conduct so prejudicial that it violated his due process rights, and that his rights to due process were violated when the prosecution induced his codefendant to enter into a plea agreement in exchange for testimony against Saavedra.

### Prosecutorial misconduct

To be entitled to habeas relief for prosecutorial misconduct, a petitioner must show there was a violation of federal constitutional rights that so infected the trial with unfairness as to make the resulting conviction a denial of due process. Fero v. Kerby, 39 F.3d 1462, 1473 (10th Cir. 1994). Allegations of prosecutorial misconduct present mixed issues of law and fact that are subject to de novo review. Id.

Saavedra argues the prosecution engaged in misconduct violative of his due process rights by inducing his codefendant Mares to accept an improper and highly favorable plea agreement contingent upon testimony implicating Saavedra.[1] Mares faced a sentence of seventy-four years' imprisonment if convicted of all charges, but the government agreed to recommend a sentence of eighteen years' imprisonment if Mares pleaded guilty to armed robbery, or a sentence of three years' probation if Mares pleaded guilty and testified against Saavedra.

Saavedra cites United States v. Waterman, 732 F.2d 1527 (8th Cir. 1984), in support of his argument. In Waterman, the panel reversed the district court's denial of a 28 U.S.C. § 2255 petition, holding because Waterman's accomplice had entered into a plea agreement contingent upon the contents and results of his testimony, the invitation to perjury was so great that Waterman was denied a fair trial. Saavedra's reliance on the panel's decision in Waterman is misplaced, however, because the Eighth Circuit considered the case en banc and affirmed the district court. Id. at 1533. The opinion relied upon has no precedential value. United States v. Gomez, 810 F.2d 947, 957 (10th Cir. 1987).

The plea agreement between Mares and the government is not a part of the record on appeal, but trial testimony did not indicate the agreement was

---

[1] Saavedra also asserts the plea agreement violated New Mexico's habitual offender statute. However, federal habeas relief is not available for violations of state law. Lujan v. Tansy, 2 F.3d 1031, 1035-36 (10th Cir. 1993).

contingent on specific results. Mares testified the agreement required him to testify truthfully, and that his plea could be rejected based on how he testified. See Gomez, 810 F.2d at 956 (testimony of accomplice who agreed to testify truthfully in exchange for government's agreement to support Rule 35 motion was admissible). Saavedra offers no evidence that Mares' agreement was improperly contingent. See United States v. Dailey, 759 F.2d 192, 196-201 (1st Cir. 1985) (plea agreement that predicated accomplice's sentence reduction on value or benefit of his cooperation not impermissible inducement to lie).

Saavedra argues, in the alternative, the court should have specifically instructed the jury concerning the nature of Mares' plea agreement and the risk of perjury it created. Saavedra cites Dailey, where the First Circuit held when an accomplice has struck a plea agreement, the jury should be informed of the exact nature of the agreement, defense counsel should be permitted to cross-examine the accomplice about the agreement, and the jury should be specifically instructed to weigh the accomplice's testimony with care. 759 F.2d at 196. Here, the court admitted the plea agreement into evidence and defense counsel cross-examined Mares about the plea agreement. The court also gave the following jury instruction:

> You alone are the judges of the credibility of the witnesses and the weight to be given to the testimony of each of them.
> In determining the credit to be given any witness, you should take into account his truthfulness and his untruthfulness, his ability

and opportunity to observe, his memory and manner while testifying, *any interest, bias or prejudice that he may have*, and the reasonableness of his testimony considered in the light of all the evidence which has been presented in this case.

Trial Tr. Vol. III at 8-9 (emphasis added). The court did not, as recommended in Dailey, specifically instruct the jury to weigh Mares' testimony with care.

Dailey is distinguishable. Saavedra seeks habeas relief from a state court conviction while Dailey was a direct appeal. Any requirement that a trial court specifically instruct a jury to weigh an accomplice's testimony with care is not a constitutional requirement and is not sufficient to entitle a petitioner to relief under § 2254. Scrivner v. Tansy, 68 F.3d 1234, 1239 (10th Cir. 1995), cert. denied 116 S. Ct. 1277 (1996). Federal habeas proceedings "may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense." Hunter v. New Mexico, 916 F.2d 595, 598 (10th Cir. 1990).

"The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury." Hoffa v. United States, 385 U.S. 293, 311 (1966). In Hoffa, the court held the fact that a government informant was under federal indictment and may have had motives to lie did not render his testimony constitutionally inadmissible. The necessary safeguards

were fulfilled in that the informant was subjected to rigorous cross-examination, and the trial court gave a general credibility instruction. Because these same safeguards were present in the instant case, Saavedra's claim of denial of due process fails.

## Testimony of Parole Status

Saavedra also accuses the government of eliciting evidence of his parole status from Mares, in violation of the trial court's order in limine which excluded evidence of prior convictions. During trial, the government asked Mares about a letter he had written in which he stated Saavedra was not with him during the 1988 armed robberies.[2] Mares testified he had given the letter to Saavedra's girlfriend:

> Q.   And to your knowledge she was going to give it to
>      Joseph Saavedra?
> A.   Yes.
> Q.   Who was going to do what with it?

---

[2] Saavedra asserts in a footnote that the government violated New Mexico law by assisting Mares in testifying falsely. He submits that because the prosecutor was aware of Mares' statement vindicating Saavedra, New Mexico's rules of professional conduct prohibited the prosecutor from offering Mares' testimony that Saavedra participated in the robberies. N.M. Stat. Ann. § 16-304. To the extent such a claim is even addressable in a § 2254 petition, the claim is without merit. Mares initially told police officers that Saavedra participated in the robberies and testified that his subsequent letter to the contrary was a lie concocted at Saavedra's direction. There is no evidence the government assisted Mares in testifying falsely.

A.    To try to--if he was going to, you know, take it to court,
      this Court, this--his charge to court for trying to get
      them dropped, or to try to keep them from getting a
      parole hearing or something.

Trial Tr. Vol. I at 207.  Saavedra moved for mistrial on the basis that Mares'

reference to Saavedra's parole status violated the court's order in limine.  The

court instructed the jury to disregard the last few words of Mares' statement.  The

court then questioned Mares outside the presence of the jury:

Q.    . . . You were--you made a statement just a moment ago
      concerning an attempt to help Mr. Saavedra on his
      parole violation hearing, something to that effect.  Were
      you instructed not to go into that?
A.    He just asked me not to mention that he was on parole
      because it was--
Q.    Okay.  So Mr. Martinez asked you--
A.    Because it might pertain to the case.
Q.    Why did you say that, do you know?
A.    Slip of the tongue.  It was the truth.  I am trying to tell
      the truth and the questions were coming out pretty fast.

Id. at 209.  The court concluded Mares' reference to Saavedra's parole status was

inadvertent and refused to grant a mistrial.

Saavedra argues his case is analogous to United States v. Sands, 899 F.2d

912 (10th Cir. 1990), a direct appeal.  In Sands, the government agreed to advise

its witnesses not to mention the fact that Sands had been in a penitentiary.  The

government asked a witness where Sands had lived during the time the witness

knew him and the witness responded Sands had been in prison.  Sands moved for

a mistrial, but the motion was denied.  This court held the district court erred in

not granting the motion for mistrial, and that while the prosecutor's conduct may not have risen to the level of misconduct, it certainly bordered on negligence.

Sands is distinguishable from the present case. The trial court in Sands found the prosecutor had not properly anticipated the witness' answer to his question. Here, there was no such finding. The prosecutor in this case reasonably could have expected an answer to the effect that Mares had written the letter to try to get the current charges against Saavedra dropped, rather than to benefit Saavedra in a parole violation hearing. The government is normally not responsible for unsolicited, non-responsive remarks from its witnesses. See United States v. Copeland, 51 F.3d 611, 616 (6th Cir.), cert. denied 116 S. Ct. 199 (1995).

The federal court may overturn a state court conviction only when the defendant's constitutional rights have been violated. Coleman v. Brown, 802 F.2d 1227, 1237 (10th Cir. 1986). To establish a constitutional violation from improper admission of testimony, the testimony must have been so prejudicial in the context of the proceedings as a whole as to deprive the defendant of the fundamental fairness essential to the concept of due process. Nichols v. Sullivan, 867 F.2d 1250, 1253 (10th Cir. 1989). Given the strength of the government's case against Saavedra, including identification by the two victims and the

testimony of Saavedra's accomplice, Mares' reference to Saavedra's parole status was not so prejudicial as to deprive Saavedra of due process.

## Ineffective assistance of counsel

Saavedra contends he was denied his Sixth Amendment right to effective assistance of counsel. To obtain reversal of a conviction on the basis of ineffective assistance of counsel, the defendant must show his counsel's performance was deficient and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). This requires showing counsel's errors were so serious as to deprive defendant of a fair trial. Whether a defendant received effective assistance of counsel is a mixed question of law and fact which we review de novo. United States v. Prows, 118 F.3d 686, 691 (10th Cir. 1997).

Saavedra claims that prior to trial he discussed with his attorney tattoos he had on his chest, arms, and hands. According to Saavedra, he told his attorney he did not want to show the tattoos to the jury because they would think he was an ex-convict. Saavedra alleges his attorney nevertheless forced him to display the tattoos to the jury during cross-examination of Ward. Saavedra concedes his attorney may have had a reason for the demonstration, such as to impeach Ward's description of Saavedra, but since Ward testified Saavedra wore a jacket covering his entire chest, there was no reason to display his chest to the jury.

-9-

Saavedra sets out his recollection of the tattoo display in an affidavit attached to his brief in support of his § 2254 petition. There is no reference to any such demonstration in the trial transcript. Even if the demonstration occurred, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Rogers v. United States, 91 F.3d 1388, 1392 (10th Cir. 1996), cert. denied 117 S. Ct. 1000 (1997). Saavedra has not overcome the presumption that the demonstration constituted sound trial strategy. Here, counsel's strategy could have been to display the tattoos to impeach Ward's description of Saavedra, which omitted any reference to tattoos.

Saavedra also asserts "defense counsel failed to impeach Mares effectively with the improper plea agreement, failed to appeal all objections made at trial, and failed to move for a mistrial when the only disinterested witness identified Mares, not Saavedra as the robber." Appellant's Br. at 24. He argues the cumulative effect of counsel's omissions denied him a fair trial.

Saavedra's counsel thoroughly cross-examined Mares with regard to his plea agreement. Saavedra does not indicate what questions counsel should have asked or what objections counsel should have appealed, and he cites no authority that requires an attorney to appeal all objections made at trial. As for his contention that counsel failed to move for mistrial "when the only disinterested witness identified Mares, not Saavedra as the robber," it is not clear to which

witness he refers since he fails to reference the trial transcript. Both Ward and Maes identified Saavedra as one of the robbers.

## Trial Court's Conduct

Saavedra claims the trial judge "displayed a hostile demeanor toward the defense, openly yelling at defense counsel during trial." Appellant's Br. at 25. To sustain an allegation of bias by the trial judge as a ground for habeas relief, a petitioner must "factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his personal opinion and impressed the jury as more than an impartial observer." Brinlee v. Crisp, 608 F.2d 839, 852-53 (10th Cir. 1979). Saavedra's bare assertion, with no reference to the trial transcript, fails to demonstrate bias on the part of the trial judge.

Saavedra also contends the trial court's admission of a photograph array violated his due process rights. He asserts a photograph display presented to Ward and Maes before trial was unconstitutionally suggestive because the photograph of Saavedra was glaringly different from the other four photographs in the display. He was the only individual wearing a tank top with visible tattoos.[3]

---

[3] While Saavedra's tattoos may have rendered his appearance different from the other men in the display, Ward testified that he saw no tattoos on Saavedra.

Determining the constitutionality of a pretrial identification procedure involves a two-step analysis; first, the court must determine whether the procedure was unnecessarily suggestive, and if found to have been unnecessarily suggestive, the court must weigh the corrupting influence against the reliability of the identification. Grubbs v. Hannigan, 982 F.2d 1483, 1489-90 (10th Cir. 1993). Whether admission of pretrial identification testimony violated due process is reviewed de novo, although the underlying facts found by the state court are entitled to a statutory presumption of correctness pursuant to 28 U.S.C. § 2254(d). Id. at 1489 n.5.

Here, the trial court found two of the photographs "might be a little bit different, but not to the point that they are impermissibly suggestive. If you look at the profiles and you look at the face, direct face, then even the additional photos may have some general similarities." Tr. of Mar. 15, 1989, Proceedings at 33. Our review of the state court's factual findings is precluded by Saavedra's failure to include the photograph display in the record on appeal. Therefore, based on the record before us, we cannot conclude the display violated Saavedra's right to due process.

Saavedra also contends the trial court violated his right to due process by limiting his voir dire of the jury. His attorney posed the following question during voir dire: "Do you think that someone being very drunk or being very high

would have any effect on their memory at all?" Trial Tr. Vol. I at 63. The trial judge interrupted, stating he would not permit him to go into such hypothetical and philosophical matters. Later, after asking if any of the potential jurors had strong feelings about plea bargains, defense counsel asked a particular juror whether he could think of a reason why someone might lie. The trial judge called counsel to the bench and stated he would not permit such irrelevant questions.

The trial judge is responsible for insuring a defendant is not denied his Sixth Amendment right to trial by an impartial jury. United States v. Gillis, 942 F.2d 707, 709 (10th Cir. 1991). To guarantee an impartial jury, it is often necessary for the voir dire examination to include specific questions concerning particular sources of possible juror bias. Id. at 710. The trial court retains great latitude, however, in deciding what questions should be asked on voir dire. Mu'Min v. Virginia, 500 U.S. 415, 424 (1991).

Saavedra submits that because the prosecution relied so heavily on Mares' testimony, it was important to uncover any prejudices that might have affected the jurors' ability to judge Mares' credibility. The trial judge restricted Saavedra from asking the venire "hypothetical" questions. He permitted questioning about knowledge of cocaine abuse, how addicts get money to pay for cocaine, and the effect of the passage of time on memory. He also allowed Saavedra to explain plea agreements and to ask the potential jurors if they had strong feelings about

-13-

plea bargains.  Saavedra has not shown that limitations on voir dire resulted in a biased jury or otherwise prejudiced his defense.

## III.

We GRANT the certificate of probable cause[4] and AFFIRM the denial of the petition.

Entered for the Court

MARY BECK BRISCOE
Circuit Judge

---

[4] Because Saavedra filed his petition in the district court prior to the effective date of the Antiterrorism and Effective Death Penalty Act, the Act's provisions which require issuance of a certificate of appealability before petitioner may proceed on appeal are inapplicable to this case.  United States v. Kunzman, 125 F.3d 1363, 1364 n.2 (10th Cir. 1997).