**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Raymond Lee HURLEY,**
**Defendant-Appellant.**

**No. 84–7293**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 12, 1984.

Maryon F. Allen, Birmingham, Ala., for defendant-appellant.

Frank W. Donaldson, U.S. Atty., John E. Ott, John C. Earnest, Jr., Asst. U.S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before RONEY, FAY and JOHNSON, Circuit Judges.

PER CURIAM:

Raymond Lee Hurley escaped from federal custody and remained at large between October, 1983 and January, 1984. Upon recapture, he was tried and convicted of escape in violation of 18 U.S.C.A. § 751(a) (1976). Hurley challenges that conviction because several members of the venire for his trial had also served on the venire the previous day in a related case. Because the trial court followed procedures that created a reasonable assurance that any prejudice of the jurors would be discovered if present, we affirm the conviction.

Hurley, a prisoner in federal custody, met another prisoner named Roy Charles Paul in a county jail where Hurley was being held temporarily. Hurley and Paul resembled one another and Paul was eligible for bail, so Hurley conceived of a simple transaction that would turn the situation to his advantage. He offered Paul $2,500 to exchange identities and Paul accepted. Hurley then called his wife Marcia and asked her to wire money for bail in the name of Roy Charles Paul to a local bondsman. The next morning a bondsman arrived to bail out Paul and the bondsman left the jail with Hurley, who was wearing a red "Pac Man" shirt belonging to Paul.

The government indicted both Marcia and Raymond Hurley for escape and their separate trials began on April 2 and April 3, respectively. Before Marcia's trial, the court read the indictment to the potential jurors and questioned them generally about the possibility of bias or prejudice. The same judge presided over Raymond's trial the next day, and 14 of the potential jurors not selected to serve on the jury the day before were included in the venire of 35 persons. The court first read the indictment against Raymond Hurley and then asked the potential jurors if any of them were familiar with the facts of the case. One juror, Douglas Stephens, raised his hand and said "I was in a panel the other day, and I guess most of us were, and there was a companion case to this." The court then asked him the following questions:

> Would any thing that you know about that other case or that you heard about it in any way affect your judgment in this case? Could you say to all of the parties that you could hear the evidence in this case that will be presented to you here in this courtroom, and the Court's instructions as to the law, and base your verdict purely upon the evidence and the Court's instructions as to the law?

Stephens responded that he could. After several questions on other topics, the court returned to the matter of Marcia Hurley's trial the day before. He asked for the names of all jurors who had been present the day before. The names were recorded, and the judge addressed the fourteen jurors as a group:

> Have any of you discussed that case with any present members of the jury who are serving in that case, or have any of you discussed that case or this case with anyone, or has it been discussed in your presence and hearing …?

After pausing to allow for possible responses, the court continued with a series of questions similar to the ones asked of Stephens and asked further if they could presume that Raymond Hurley was innocent and that the trial of Marcia Hurley had "nothing whatsoever to do with [this case], whatever you might have heard." Eventually the court declared the entire panel to be qualified.

Hurley contends that the trial court did not adequately inquire into the possible prejudice arising from the events

of the day before; hence, it may have failed to disqualify one or more jurors not qualified to serve, forcing his attorney to waste peremptory challenges. Certainly Hurley has a right to an impartial jury and a right to have effective use of his peremptory challenges. *Rosales-Lopez v. United States*, 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981); *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). But the law commits the procedures used at voir dire to the sound discretion of the trial court. Fed.R.Crim.P. 24(a). Normally the court does not abuse this discretion as long as it adopts procedures that create a reasonable assurance that any prejudice of the jurors will be discovered, if present, *United States v. Tegzes*, 715 F.2d 505 (11th Cir.1983); *United States v. Nell*, 526 F.2d 1223 (5th Cir.1976). The trial judge has such discretion because he or she can best evaluate demeanor evidence and other factors relevant to the qualifications of a juror.

Hurley asserts that the questions asked by the trial court in this case did not produce a reasonable assurance of uncovering possible prejudice among the 14 jurors who had been present the day before. Even though the court questioned those jurors quite thoroughly as a group, Hurley argues that it should have questioned individual jurors more specifically and searchingly regarding the nature of their reactions to the events of the previous day, matters that could not be pursued with the entire group at once.

■ Individual questioning may be necessary in some circumstances to gain assurance that all prejudice has been exposed. In *United States v. Davis*, 583 F.2d 190 (5th Cir.1978) the trial court's failure to question individual jurors was held to be improper in light of the extensive pretrial publicity involved in that case. The Fifth Circuit panel[1] found the nature of the publicity especially significant. The reports were quite extensive and concerned the past criminal records of the defendants; they also reported the story in a sensational manner.

■ But the likelihood of prejudice is not nearly so pronounced in this case. The jurors only heard the indictment against Marcia Hurley and general questions regarding possible bias. They heard similar questions from the judge on the next day, and the prosecutor in the case against Raymond Hurley presented evidence regarding Marcia Hurley's involvement. They had heard nothing significant that they were not entitled to rely upon. Furthermore, the judge knew exactly what the jurors had heard the day before. The possibility of prejudice was not great enough to require individual questioning of jurors, a matter that normally lies within the discretion of the trial court. *United States v. Colacurcio*, 659 F.2d 684 (5th Cir.1981) (Unit A), *cert. denied*, 455 U.S. 1002, 102 S.Ct. 1635, 71 L.Ed.2d 869 (1982). *Cf. United States v. Corey*, 625 F.2d 704 (5th Cir.1980) (emphasizing helpfulness of question asked to all jurors, even though some questions were asked individually).

This case differs from *United States v. Patterson*, 648 F.2d 625 (9th Cir.1981) where a voir dire examination was inadequate as to potential jurors present at the voir dire for the trial of the same defendant on a similar charge because the court's questions did not even reveal the fact that there were overlapping venires. The court's questioning in this case explored the possible source of prejudice. In addition, since there were two defendants and one crime involved here, the jurors would be less likely to take the first indictment as a sign of the bad character of the defendant in the second trial. Unlike the case of a single defendant and two crimes, the overlap here did not give any additional or improper information to the jurors.

■ The trial court recognized the possibility of prejudice in this case and took

---

1. The Eleventh Circuit has adopted the case law of the former Fifth Circuit handed down as of September 30, 1981, which is binding unless

and until overruled or modified by this Court en banc. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

adequate steps to insure that the jury could return an impartial verdict. Its questions created a reasonable assurance that any actual prejudice would come to light. Therefore, the conviction is AFFIRMED.