**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ron GILLIS, Defendant–Appellant.**

**No. 90–8064.**

United States Court of Appeals,
Tenth Circuit.

Aug. 12, 1991.

Rehearing Denied Sept. 3, 1991.

Scott H. Robinson of Gerash, Robinson & Miranda, P.C., Denver, Colo., for defendant-appellant.

John R. Barksdale, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., with him on the brief), D. Wyo., Casper, Wyo., for plaintiff-appellee.

Before McKAY, SETH and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

Defendant Ron Gillis was convicted of conspiring to distribute methamphetamine in violation of 21 U.S.C. § 846 (1988). He was also convicted of possessing a firearm during a drug trafficking offense under 18 U.S.C. § 924(c)(1) (1988). Defendant's main contention on appeal is that he was deprived of his constitutional right to a fair trial because members of the venire panel also sat on a panel for an earlier case in which defendant was tried for another methamphetamine distribution conspiracy.

I.

In early 1988, the Wyoming Division of Criminal Investigation and the Sheriff's Office of Campbell County, Wyoming, investigated a methamphetamine distribution scheme in the vicinity of Gillette, Wyoming. The investigation focused on defendant as the source in the distribution chain and on Marvin Aeschbacher as a mid-level seller.

Through the use of an undercover informant, the officials initially purchased one-eighth of an ounce of methamphetamine from a street-level seller. The informant then bought one ounce of methamphetamine from the same individual after the seller obtained approval from his source, Marvin Aeschbacher.

The officials proceeded to buy larger quantities of methamphetamine in an attempt to identify those individuals higher up the distribution chain. The undercover informant went to Mr. Aeschbacher's trail-

er home to negotiate a two-ounce purchase. During the meeting, the informant noticed a pistol hanging on the wall and asked about buying it. Mr. Aeschbacher told him that the gun was stolen and that he had other firearms. The informant bought the pistol. Later that evening, the informant purchased from Mr. Aeschbacher two ounces of methamphetamine, another pistol, and a shotgun.

Mr. Aeschbacher testified that he travelled to defendant's residence in Glenrock, Wyoming, to obtain methamphetamine from his source, defendant Gillis. Record, vol. 8, at 131–32. Police surveillance followed Mr. Aeschbacher as he travelled from Gillette to Glenrock and observed his activities at defendant's residence. Testimony was also presented that defendant would supply Mr. Aeschbacher with methamphetamine on credit and that he would be paid after Mr. Aeschbacher made sales in Gillette.

Approximately one month before trial, defendant was tried on identical charges arising out of a methamphetamine distribution scheme involving different coconspirators. Of the thirty-two prospective jurors on the venire panel at defendant's second trial, at least fifteen were present at the selection of the first jury. Three individuals present on both panels sat as trial jurors in the present case. These three persons had been excused during the voir dire examination in the first trial.

Prior to the voir dire examination, defendant challenged the entire venire panel for cause. He also specifically challenged for cause the venire members who were on the previous panel. Defendant argued that these individuals had heard voir dire concerning the first trial, knew about his previous indictment and trial, and were therefore unable to be fair and impartial. The record does not indicate, however, whether they were aware of the disposition of the charges. Defendant was also concerned about asking specific questions during voir dire for fear of notifying the other venire members about the first trial.

The district judge denied defendant's challenge for cause. He reasoned that the prior panel service did not necessarily demonstrate prejudice, and that juror prejudice, if any, would be brought out during the voir dire examination. Record, vol. 6, at 6. Moreover, in response to defendant's concern about asking questions regarding the first trial, the judge stated that defendant would not "have the opportunity to do the asking. I'll do the asking, and what I ask will be whether or not they have any grounds of prejudice about which we haven't inquired, and we'll see what their answers are." *Id.* at 7.

During the voir dire examination, the district judge did not specifically inquire about possible juror bias stemming from service on the first venire panel and from knowledge that defendant had been tried on identical charges. Instead, the judge asked: "Do any of you know of any reason whatsoever about which I may not have asked which directly or indirectly could impair your impartiality today?" *Id.* at 39. In addition, defendant did not ask questions concerning possible prejudice due to service on the first venire panel. Nor did defendant exhaust five of his peremptory challenges.

On appeal, defendant argues that he was denied his sixth amendment right to an impartial jury. He also contends that there was insufficient evidence presented at trial to demonstrate that he had any involvement in Mr. Aeschbacher's sale of firearms to the undercover informant.

## II.

The sixth amendment to the United States Constitution states: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." It is the responsibility of the district court to guarantee that the jury is fair and impartial. *Frazier v. United States*, 335 U.S. 497, 511, 69 S.Ct. 201, 209, 93 L.Ed. 187 (1948). Further, the procedures used at voir dire are committed to the discretion of the district court. Fed. R.Crim.P. 24(a). A district judge abuses that discretion if the scope of voir dire is so limited that it does not create any reasonable assurances that prejudice would be

discovered if present. *United States v. Hurley,* 746 F.2d 725, 727 (11th Cir.1984); *United States v. Patterson,* 648 F.2d 625, 630 (9th Cir.1981). Reversal is required if the specific circumstances suggest a significant risk of prejudice and if examination or admonition of jurors fails to negate that inference. *United States v. Wylie,* 919 F.2d 969, 979 (5th Cir.1990); *Patterson,* 648 F.2d at 629.

To guarantee an impartial jury, it is often necessary for the voir dire examination to include specific questions concerning particular sources of possible juror bias. For example, in *Casias v. United States,* 315 F.2d 614 (10th Cir.), *cert. denied,* 374 U.S. 845, 83 S.Ct. 1901, 10 L.Ed.2d 1065 (1963), the defendant argued that he was deprived of his right to an impartial jury due to prior jury service by panel members on similar cases in which prosecution witnesses scheduled to appear in his case had testified. The district judge, however, had carefully probed the venire panel for prejudice and asked each prospective juror questions suggested by defendant, including whether they would give more weight to the testimony of those prosecution witnesses than to others. We concluded that the voir dire examination was adequate and declined to hold that the jurors were disqualified as a matter of law. *Id.* at 618.

In *United States v. Franklin,* 700 F.2d 1241 (10th Cir.1983), juries for several criminal trials, including the defendant's, were selected on the same day. Before his trial, the defendant objected to the jury because of possible bias arising from jury service on similar cases by some members in the interim between selection and trial. We held that the district court erred by failing to grant a supplemental voir dire to determine if there had been such interim service. Moreover, we noted the importance of a searching inquiry during the supplemental voir dire; jurors can be dismissed for cause if questioning reveals that they had served on cases involving similar legal or factual issues between the date of their selection and the commencement of trial. *Id.,* 700 F.2d at 1242. *See also, United States v. Jefferson,* 569 F.2d 260 (5th Cir.1978) (dis-

trict court should inquire about jury service between time of selection for defendants' trial and date trial began).

Finally, in *United States v. Patterson* the defendant argued that he was denied an impartial jury because six members of the venire panel in his first trial were jurors in his later trial. The charged offenses were similar and the trials occurred only one day apart. Although the district judge asked general questions about possible prejudice, the voir dire did not specifically target potential prejudice from the earlier voir dire. The Court of Appeals for the Ninth Circuit reversed the defendant's conviction after concluding that these circumstances created a significant risk of prejudice and that the voir dire examination failed to negate that risk. *Patterson,* 648 F.2d at 630.

■ In defendant Gillis' case, the risk of a biased jury was significant. The two trials involved methamphetamine distribution conspiracies. Both indictments charged the use of firearms during a drug trafficking offense. The trials occurred approximately one month apart. Potential jurors present at both voir dire examinations could easily have been influenced by the prior questioning such that they would not be "willing to decide the case solely on the evidence before" them. *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982); *see also Marrero v. Florida,* 343 So.2d 883 (Fla.App. 2 Dist. 1977) (concluding that overlapping venire members were bound to be unfairly prejudiced due to their knowledge of the defendant's arrest on different charges).

Moreover, the district court erred by failing to ascertain whether information in the previous voir dire prejudiced the panel members in the case about to be presented. The judge made no specific inquiry about such potential prejudice. His catch-all question about whether panel members knew of any reason why their impartiality would be impaired was insufficient to ensure an unbiased jury. The questioning did not bring to the attention of the overlapping panel members the possibility that they might pre-judge defendant's guilt

based on their knowledge of his previous arrest, indictment, and trial. *See Beard v. Mitchell,* 604 F.2d 485, 501 (7th Cir.1979). Without an adequate examination to negate the risk of prejudice, we conclude that the procedures used by the district judge failed to create a reasonable assurance that any actual prejudice was discovered.

Regardless of the adequacy of the voir dire, the government contends that defendant waived his sixth amendment argument because (1) he failed to question the venire members about prejudice from the prior voir dire, and (2) he did not exhaust his peremptory challenges.

 Defense counsel cannot be faulted for failing to submit voir dire questions to the district court regarding prejudice from the overlapping venire panels. When defense counsel moved to dismiss the entire panel for cause, the district judge informed her that she would be unable to ask specific questions concerning prior panel service. We will not penalize defendant for counsel's compliance with the judge's directive. *Cf. United States v. Carranza,* 583 F.2d 25 (1st Cir.1978) (defendant not deprived of right to exercise challenges where counsel was free to submit special voir dire questions and failed to do so, where counsel failed to request challenges for cause, and where members of panel who served on prior case were eliminated from jury by exhaustion of peremptory challenges).

 In addition, defendant did not waive his right to challenge for cause the overlapping panel members by virtue of his failure to exhaust his peremptory challenges. Defendant and his co-defendant were given twelve peremptory challenges collectively. They were free to allocate the challenges between themselves as they wished. The co-defendants declined to exercise five of the twelve challenges. Exhausting the peremptory challenges, however, would have been a futile effort because they were insufficient to remove both the tainted venire members already called to the jury box and those similarly tainted members who would have replaced them. Due to the futility of exhausting his peremptory strikes, we conclude that defendant did not waive his right to challenge the overlapping venire members for cause. *See United States v. Haynes,* 398 F.2d 980, 983 (2d Cir.1968), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 124 (1969). *Cf. Ross v. Oklahoma,* 487 U.S. 81, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) (defendant not denied right to impartial jury where jurors who ultimately sat were impartial, despite defendant having to use peremptory strikes to correct trial court's failure to strike jurors for cause).

### III.

Defendant also argues that there was insufficient evidence to convict him for the use of a firearm during the methamphetamine distribution conspiracy. Defendant was convicted of this substantive count based on the co-conspirator theory of liability of *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).*

 A panel of this court has previously held that exactly the same evidence used against co-conspirator Brad Parkinson was sufficient to support a conviction for use of a firearm during this methamphetamine conspiracy. *United States v. Parkinson,* 936 F.2d 584 (10th Cir.1991). That decision is *stare decisis* on the issue of sufficiency of the evidence to support this conviction.

Because we remand this case for a new trial, we need not reach defendant's last argument that the district court erred by allowing the government to present testimony concerning the use of firearms during drug transactions.

This case is REVERSED and REMANDED to the district court for a new trial.

* Under the *Pinkerton* theory, a conspirator "can be held responsible for the substantive crimes committed by his co-conspirators to the extent those offenses were reasonably foreseeable consequences of acts furthering the unlawful agreement, even if he did not himself participate in the substantive crimes." *Pinkerton v. United States,* 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946).