RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0205P (6th Cir.)
File Name: 01a0205p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DERRICK QUINTERO,
　　　　*Petitioner-Appellee,*

　　　*v.*

No. 99-6724

RICKY BELL, Warden,
　　　　*Respondent-Appellant.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 98-00246—Thomas B. Russell, District Judge.

Submitted: March 15, 2001

Decided and Filed: June 29, 2001

Before: KEITH, NORRIS, and DAUGHTREY, Circuit
Judges.

─────────────────

**COUNSEL**

**ON BRIEF:** Rickie L. Pearson, OFFICE OF THE
ATTORNEY GENERAL, Frankfort, Kentucky, for
Appellant. Paul L. Whalen, Ft. Thomas, Kentucky, for
Appellee.

1

—————————

**OPINION**

—————————

ALAN E. NORRIS, Circuit Judge. Warden Ricky Bell appeals from the district court's judgment granting a conditional writ of habeas corpus to Derrick Quintero pursuant to 28 U.S.C. § 2254. We **AFFIRM**.

**I.**

Quintero and other inmates escaped from the Kentucky State Penitentiary in June, 1988. In 1989, subsequent to his recapture, a jury convicted Quintero of second degree escape and first degree persistent felony offender. The jury included seven jurors who had previously served on a jury that had convicted Quintero's co-escapees.

At trial, Quintero admitted to having escaped but argued a "choice of evils" defense pursuant to Kentucky Revised Statute § 503.030, which excuses a defendant's conduct if it was necessitated by a specific and immediate threat of personal injury. However, the trial court did not instruct the jury on this affirmative defense since it concluded that Quintero had failed to offer proof of an immediate threat of personal injury. After it convicted Quintero, the jury was instructed to sentence him to between ten and twenty years of imprisonment. The jury then sentenced Quintero to the maximum term of twenty years of imprisonment, to run consecutively with the sentence he was serving at the time of the escape.

Defense counsel did not object to the composition of the jury based on the prior involvement of the seven jurors. Although the judge, prosecutor, and defense attorney had participated in the previous trial of Quintero's co-escapees, none of them specifically questioned the seven jurors about whether their involvement in the prior trial would affect their impartiality. Instead, the prosecutor and the defense attorney generally inquired of all the jurors whether anything they

However, as is the case with all structural errors, the tainted composition of Quintero's trial undermined Quintero's entire trial. The only appropriate remedy is to grant Quintero a new trial.

**III.**

For the foregoing reasons, the district court's grant of a conditional writ of habeas corpus is **AFFIRMED**.

Quintero's defense attorney--acknowledged, much less expressed any concern, that seven of the jurors had previously served on a jury that had convicted Quintero's co-escapees. The presence of these jurors and the utter failure by Quintero's trial counsel to contest their presence undermined the entire trial process, such that it lost "its character as a confrontation between adversaries." *Cronic*, 466 U.S. at 657; *see also Arizona v. Fulminante*, 499 U.S. 279, 309 (1991) (defining structural errors as those errors that affect the "entire conduct of the trial from beginning to end," as opposed to trial errors, which occur during the presentation of the case to the jury); *United States v. McFerron*, 163 F.3d 952, 956 (6th Cir. 1998) (holding that the erroneous denial of a peremptory challenge constituted "structural error" under the *Fulminante* analysis). We therefore agree with the district court's conclusion that *Cronic* applies, obviating the need for Quintero to demonstrate that his counsel's ineffective representation actually prejudiced him for purposes of satisfying the prejudice prong of *Strickland*.

Thus, with Quintero having satisfied the performance and prejudice prongs of *Strickland*, the district court correctly concluded that cause for the defaulted constitutional claim existed in the form of ineffective assistance of counsel. Furthermore, since the structural nature of the tainted jury error warrants a presumption of prejudice that is exempt from harmless error analysis, sufficient cause and prejudice existed for the district court to reach the merits of Quintero's procedurally defaulted Sixth Amendment claim.

### D. *Scope of Limited Writ*

Bell asserts that if a conditional writ of habeas corpus is proper, it should only result in a new sentencing hearing, as opposed to the district court's mandate that Quintero receive a new trial to determine the question of his guilt or innocence. Bell bases his assertion on his interpretation of the district court's opinion, whose discussion of prejudice, Bell opines, concerns only the sentence imposed on Quintero by the jury.

knew or had heard about the case would affect their ability to render a fair and impartial verdict. All of the jurors indicated that they could render a fair and impartial verdict.

The Kentucky Supreme Court affirmed Quintero's conviction on direct appeal. With respect to Quintero's claim that he did not receive a fair and impartial jury, the Kentucky Supreme Court declined to address its merits on the ground that Quintero had failed to preserve the issue for review.

On August 16, 1995, the trial court denied Quintero's pro se motion to vacate, set aside, or correct his sentence. The Kentucky Court of Appeals affirmed the denial; without directly addressing Quintero's contention that he did not receive an impartial jury, it noted that the Kentucky Supreme Court had refused to address the issue on direct appeal since it was not preserved. Quintero then filed a motion for discretionary review, which the Kentucky Supreme Court rejected.

Quintero filed his petition seeking a writ of habeas corpus. Based on its conclusion that Quintero's Sixth Amendment right to an impartial jury was violated, the district court granted a conditional writ of habeas corpus requiring a new trial. Though Quintero had procedurally defaulted his Sixth Amendment impartial jury claim, the district court determined that he had received ineffective assistance of counsel; that sufficient cause and prejudice for the default therefore existed; and that it could reach the merits of his claim.

### II.

### A. *Standard of Review*

We review a district court's legal conclusions in a habeas proceeding de novo and its factual findings for clear error. *Lucas v. O'Dea*, 179 F.3d 412, 416 (6th Cir. 1999). Because Quintero filed his habeas petition on July 14, 1998, the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 govern review of the state court's decision. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997);

*Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997). As amended, 28 U.S.C. § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

With respect to the district court's finding that Quintero received ineffective assistance of trial counsel, we review de novo the performance and prejudice prongs of the test announced in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Sims v. Livesay,* 970 F.2d 1575, 1579 (6th Cir. 1992) (citing *Strickland*, 466 U.S. at 698).

B. *Sixth Amendment Violation*[1]

Criminal defendants have a Sixth Amendment right to be tried by impartial and unbiased jurors. *United States v. Frost*, 125 F.3d 346, 379 (6th Cir. 1997) (citing *Ross v. Oklahoma*,

---

[1] We first address the merits of Quintero's constitutional claim, even though the threshold issue is whether the district court properly reached the merits of the claim. A discussion of the merits illuminates the issue of prejudice, an element that Quintero must demonstrate for us to consider his procedurally defaulted claim. *See Reed v. Farley*, 512 U.S. 339, 354, (1994) (requiring that cause for, and prejudice resulting from, a procedurally defaulted claim be demonstrated before the merits of the claim may be addressed).

prejudice. So are various kinds of state interference with counsel's assistance. Prejudice in these circumstances is so likely that case by case inquiry into prejudice is not worth the cost. Moreover, such circumstances involve impairments of the Sixth Amendment right that are easy to identify and, for that reason and because the prosecution is directly responsible, easy for the government to prevent.

*Strickland*, 466 U.S. at 692 (citations omitted). *Cronic*, the companion case to *Strickland*, also discusses contexts where prejudice is to be presumed:

[t]here are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified. . . . [In these circumstances,] the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial.

*Cronic*, 466 U.S. at 658, 659-60. In *Rickman v. Bell*, 131 F.3d 1150 (6th Cir. 1997), we applied the *Cronic* exception to excuse a death row petitioner's need to show actual prejudice where his counsel openly displayed contempt for him, effectively providing the petitioner "not with defense counsel, but with a second prosecutor." *Id.* at 1157. In deciding whether *Cronic* applied, we noted that the fundamental question "is whether the trial 'process [has lost] its character as a confrontation between adversaries'; if so, then 'the constitutional guarantee is violated.' And then, it is not necessary to demonstrate actual prejudice." *Id.* at 1155 (quoting *Cronic*, 466 U.S. at 656-57).

Quintero's case merits a presumption of prejudice because the presence of the seven jurors and trial counsel's de facto acceptance of the jury composition amounted to a structural error, which we exempt from harmless error analysis. The same judge, prosecutor and defense attorney who participated in the prior trial discussed the effect of pre-trial publicity with these jurors. However, none of them--most importantly

trial publicity, the voir dire stopped short of revealing that several potential jurors had served on the jury of Petitioner's co-escapees a few months prior. Given that Petitioner's counsel represented the co-escapees in the earlier trial, he should have been aware of the potential that some of the same jurors would be on Petitioner's voir dire panel.

(Dist. Ct. Op., Dec. 2, 1999, at 7.)   With respect to the prejudice prong of *Strickland*, the district court presumed prejudice, holding that Quintero did not have to show actual prejudice based on an exception set forth in *United States v. Cronic*, 466 U.S. 648, 658 (1984) (stating that "[t]here are . . . circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified").

The parties do not dispute the district court's finding that Quintero satisfies the performance prong of *Strickland*. However, Bell asserts that the district court, in its effort to reach the merits of Quintero's procedurally defaulted claim, erroneously concluded that Quintero satisfied the prejudice prong of *Strickland*. Bell argues that the district court should have followed the Kentucky Court of Appeals, which, in affirming the denial of Quintero's motion to vacate his sentence, held that Quintero could not show prejudice because he had confessed under oath that he was guilty of escape.

While we agree with Bell that Quintero's admission at trial strongly undermines a finding of actual prejudice, we believe the more appropriate inquiry in this case is whether the jury composition and the lack of any objection thereto by Quintero's trial counsel constituted an error from which prejudice should be presumed.

The *Strickland* Court acknowledged the need to presume prejudice in certain situations:

In certain Sixth Amendment contexts, prejudice is presumed.  Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in

487 U.S. 81, 85 (1988)).  In evaluating whether Quintero's right to an impartial jury was violated, we note that the parties do not cite to, nor can we find, any federal cases where members of a jury served in a prior trial of a co-conspirator. However, a case from the Tenth Circuit is instructive.

In *United States v. Gillis*, 942 F.2d 707, 710 (10th Cir. 1991), the Court of Appeals reversed a conviction where members of the jury had sat on a voir dire panel from an earlier case in which the same defendant was tried on different charges. *Id.* at 710.  The Tenth Circuit found a significant risk that the jury was biased due to some of the jurors' exposure to voir dire questions in the earlier case. *Id.* According to the court, "[p]otential jurors present at both voir dire examinations could easily have been influenced by the prior questioning such that they would not be 'willing to decide the case solely on the evidence before' them." *Id.* (quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)). Although *Gillis* involved two trials of the same defendant, we believe that the logic of that decision applies with equal force to Quintero's trial before seven jurors who had previously convicted his co-escapees. *See United States v. Maliszewski*, 161 F.3d 992, 1004 (6th Cir. 1998) (observing that a defendant is prejudiced where a court informs a jury that indicted co-defendants have pleaded guilty).

We thus agree with the district court's conclusion that Quintero's Sixth Amendment right to an impartial jury was violated.   If a juror's mere exposure to a prior voir dire prejudices a defendant, then the circumstances of Quintero's trial certainly violate the Sixth Amendment since seven of the jurors who convicted him had served on a jury two months earlier and had determined beyond a reasonable doubt that his co-escapees were guilty of the same offense.

Bell argues that the district court applied case law that post-dates Quintero's conviction, and thus inappropriately applied constitutional principles of law that did not exist when the conviction became final. *See Teague v. Lane*, 489 U.S. 288, 310 (1989) ("[N]ew constitutional rules of criminal procedure

will not be applicable to those cases which have become final before the new rules are announced."). However, the principle of presuming prejudice in extreme cases of jury bias predates Quintero's 1989 conviction. *See, e.g., McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556-57 (1984) (Blackmun, J., concurring) (acknowledging the possibility of facts from which "bias is to be inferred"); *Remmer v. United States*, 347 U.S. 227, 229 (1954) (noting that in criminal cases, "any private communication, contact, or tampering, directly or indirectly, with a juror about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial"). Moreover, the district court did not rely on recent cases, such as *Gillis* or *Frost*, to announce a new controlling rule; instead, as in our own analysis, the district court's discussion of these cases was simply part of its reasoning by analogy to determine that the facts of this case warranted a conclusion that Quintero's Sixth Amendment right to be tried by an impartial jury was violated.

Finally, the jurors' attestation of their impartiality does not, under the circumstances of this case, overcome a presumption of bias. After being questioned by the prosecutor and the defense attorney regarding their general exposure to the case, every juror indicated that he or she could render a fair and impartial verdict. However, although the judge, prosecutor, and defense attorney had participated in the trial of Quintero's co-escapees, none of them questioned the seven jurors about their involvement in that trial. Such a catch-all colloquy was inadequate to wipe away the taint of bias which attached to a jury that included seven members who had previously determined beyond a reasonable doubt that the others who escaped were guilty. Under these circumstances, bias must be presumed.

### C. *Procedural Default*

We now turn to whether the district court appropriately reached the merits of the procedurally defaulted claim.[2] A federal court may not reach the merits of a procedurally defaulted constitutional claim unless the petitioner demonstrates both that there was cause for the default and that the constitutional violation prejudiced him. *Reed v. Farley*, 512 U.S. 339, 354 (1994). In reaching the merits of Quintero's constitutional claim, the district court determined that he had established cause and prejudice for the procedurally defaulted claim based on ineffective assistance of trial counsel.[3]

Counsel's performance at trial is constitutionally ineffective when his or her representation is both objectively unreasonable and prejudicial to the defendant. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The district court determined that Quintero's counsel failed the performance prong of *Strickland*:

While counsel conducted a thorough voir dire regarding what the potential jurors knew of the case based on pre-

---

[2]The parties do not dispute that Quintero's counsel, by failing to object to the impaneling of the seven jurors who had previously served on the jury that convicted Quintero's co-escapees, procedurally defaulted Quintero's Sixth Amendment claim that he was denied an impartial jury. *See Gilbert v. Park*, 763 F.2d 821, 824 (6th Cir. 1985).

[3]There are two prejudice inquiries at issue in this case. First, there is the prejudice *resulting from the tainted jury*, which Quintero must demonstrate (along with cause) to reach the procedurally defaulted tainted jury claim. Second, within the "cause" inquiry for reaching the procedurally defaulted tainted jury claim is an inquiry regarding the prejudice *resulting from ineffective assistance of counsel*. Since the two prejudice inquiries are so closely linked in this case, we discuss them together. Quintero's admission of escape also suggests that harmless error analysis should apply. However, for reasons discussed *infra*, we conclude that the jury was so tainted as to constitute structural error. Structural errors are, of course, exempt from harmless error analysis.