included references to his being on the F.B.I.'s Ten Most Wanted List and on the television show *America's Most Wanted*. The Michigan Court of Appeals found that these references were improperly admitted, but concluded that the error was harmless because of the "overwhelming evidence of guilt on the record."

As discussed *supra*, in order for Ford to prevail, he must prove that the admission of this "bad acts" evidence resulted in actual prejudice. *See Brecht*, 507 U.S. at 637. Although the references to the F.B.I's Ten Most Wanted List and to *America's Most Wanted* were of nominal relevance and prejudicial, Ford fails to prove that this trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Id*. Again reviewing the evidence presented at trial, there is substantial evidence of Ford's guilt, notwithstanding the admission of the "bad acts" evidence. Although we agree with Ford's contention that this evidence was at best tangentially related to the charges for which he was on trial, we do not agree with his assertion that this evidence was so overwhelming that it substantially affected the jury's verdict.

In light of all the evidence presented at trial, we conclude that Ford was not denied the right to a fair trial by the admission of this "bad acts" evidence in conjunction with Temple's hearsay statements. Ford has failed to prove that these trial errors substantially affected the verdict, and, therefore, the Michigan Court of Appeals did not unreasonably apply the harmless beyond a reasonable doubt test articulated in *Chapman*.

**AFFIRMED.**

*RECOMMENDED FOR FULL-TEXT PUBLICATION*
*Pursuant to Sixth Circuit Rule 206*

ELECTRONIC CITATION: 2002 FED App. 0012P (6th Cir.)
File Name: 02a0012p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

WARDELL DAVID FORD,
    *Petitioner-Appellant,*

    *v.*           No. 00-1009

BRUCE CURTIS,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-75037—Robert H. Cleland, District Judge.

Argued: September 11, 2001

Decided and Filed: January 10, 2002

Before: SILER, CLAY, and GIBSON, Circuit Judges.[*]

---

**COUNSEL**

**ARGUED:** F. Martin Tieber, STATE APPELLATE DEFENDER OFFICE, Lansing, Michigan, for Appellant. Brad H. Beaver, OFFICE OF THE ATTORNEY GENERAL, HABEAS CORPUS DIVISION, Lansing, Michigan, for

---

[*] The Honorable John R. Gibson, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Appellee.   **ON BRIEF:**   F. Martin Tieber, STATE APPELLATE DEFENDER OFFICE, Lansing, Michigan, for Appellant. Carolyn M. Breen, PROSECUTING ATTORNEY OFFICE, COUNTY OF WAYNE, Detroit, Michigan, for Appellee.

———————————

## OPINION

———————————

SILER, Circuit Judge.  Petitioner Wardell David Ford, a Michigan state prisoner, appeals the district court's judgment dismissing his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.   For the reasons that follow, we **AFFIRM** the district court's judgment.

## BACKGROUND

In 1991, Ford was tried and convicted of first degree felony murder, armed robbery, and felony firearm.   These convictions arose out of the robbery and murder of a Purolator security guard at the Montgomery Ward's department store in Detroit, Michigan in 1983.  Two men committed the robbery and David Temple, one of the robbers, was killed during the incident.  Ford was suspected of being Temple's accomplice, and after a long time on the run was arrested in Connecticut in 1990. The trial court sentenced Ford to non-parolable life imprisonment for the felony murder conviction, to be served consecutive to a two-year sentence on the felony firearm conviction.

Ford filed a direct appeal with the Michigan Court of Appeals arguing, among other things, that he was denied a fair trial when the trial court admitted: 1) hearsay statements of David Temple, linking Ford to the preparation and perpetration of the Ward's robbery and murder; and 2) evidence that Ford was on the FBI's Ten Most Wanted List.  The Michigan Court of Appeals issued an unpublished per curiam opinion vacating in part and remanding in part. *People v. Ford*, No. 148072 (Mich. Ct. App. June 20, 1995).

Roszowski, Thompson and Osborne.   Furthermore, the defense clearly explained to the jury that Temple's statements were the only evidence linking Ford to the get-away car and that there were no prints or other identifying evidence found in the car.  The jury was also made fully aware of Osborne's undisputed veracity problems when he testified that he lied to police when he told them that Ford had admitted to committing the robbery.  Moreover, Ford's theory that one of the Osborne brothers had committed the crime and that Roszkowski and Thompson had misidentified him was also communicated to the jury.  Ford has not shown that the trial court's error had a substantial and injurious effect on the jury's verdict.  Therefore, the district court was correct in denying Ford's claim that admission of Temple's hearsay statements resulted in a violation of his right to due process.

The district court and the Michigan Court of Appeals declined to consider Ford's claim under the Sixth Amendment right to confrontation.  Even if this court were to assume, without deciding, that the admission of these hearsay statements rose to the level of a Confrontation Clause violation, the same analysis under *Brecht* would apply. Violations of the Confrontation Clause are subject to harmless-error analysis. *See Olden v. Kentucky*, 488 U.S. 227, 232 (1988).  Since the right of confrontation is a trial right, *see Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987), habeas petitioners are not entitled to relief unless they can establish that the error resulted in actual prejudice.  *See Brecht*, 507 U.S. at 637.  As discussed in the analysis above, review of the evidence presented at trial fails to reveal that actual prejudice resulted from the admission of Temple's hearsay statements.  For this reason, we deny Ford's claim that his Sixth Amendment right to confrontation was violated.

Next, we will address Ford's allegation that the Michigan Court of Appeals denied him his Fourteenth Amendment right to due process by unreasonably concluding that the trial court's admission of "bad acts" evidence was harmless error. Ford takes issue with the overwhelming amount of evidence presented to show that he was a dangerous felon, which

It vacated Ford's sentence for armed robbery and remanded the case to the trial court for an evidentiary hearing on the ineffective assistance of counsel issues, not currently before this court. All remaining claims were rejected. The Michigan Supreme Court denied Ford's application for leave to appeal. *People v. Ford*, 550 N.W.2d 529 (Mich. 1996).

Ford's federal habeas litigation began when he filed a petition in the Eastern District of Michigan in 1998. The district court denied Ford's habeas petition, finding that the Michigan Court of Appeals did not unreasonably apply clearly established federal law as determined by the Supreme Court of the United States. A certificate of appealability was granted with respect to Ford's claims that the statements attributed to Temple and the evidence that Ford was on the F.B.I.'s Ten Most Wanted List deprived him of a fair trial.

## STANDARD OF REVIEW

We review a district court's legal conclusions in a habeas proceeding *de novo* and its findings of fact for clear error. *See Quintero v. Bell*, 256 F.3d 409, 411 (6th Cir. 2001). Because Ford filed his habeas petition with the district court after the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the provisions of that Act apply to this case. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Quintero*, 256 F.3d at 411.

Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was: 1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The first prong of this test is at issue in this case.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court held that a state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if the state court

statements made by Temple[1] did not have a harmful or injurious effect on the fundamental fairness of the trial. There was ample evidence, besides the statements made by Temple, upon which to base a conviction and we are not convinced that the verdict would have been different if Temple's hearsay statements had been excluded.

First, there was eyewitness testimony from Edward Roszkowski and Tina Thompson identifying Ford as the man they saw running from Ward's on the day of the robbery. In addition to this identification testimony, there was a substantial amount of circumstantial evidence linking Ford to the robbery. In particular, the testimony of Gregory regarding her contact with Ford after the robbery was compelling testimony against Ford. Gregory testified that on two separate occasions Ford made arrangements to meet her to give her Temple's half of the money. There was also testimony from Eddie Hall that on the day of the robbery Ford purchased a car from him with cash and never returned to obtain the license plate. Robert Osborne also testified that Ford and Temple came to his home on the morning of the robbery and removed a license plate from Temple's automobile. Osborne went on to explain that Ford returned later that day without Temple. Ford was carrying a canvas bag and said he was carrying two guns, but Osborne thought it looked more like bricks. Osborne also testified that Ford pulled ten dollars from the bag and gave it to him to go to the store.

Ford asserts that the only evidence, besides Temple's hearsay statements, linking him to the robbery was the unreliable identification testimony of Roszkowski and Thompson and statements by an admitted embellisher, Osborne, who might have been a suspect himself. However, as stated, there was other strong circumstantial evidence linking Ford to the robbery besides the testimony of

---

[1] Even if we were to assume that the statements were improperly admitted for a non-hearsay purpose, as argued by Ford in his brief and rejected by the Michigan Court of Appeals and the district court, our harmless error analysis and conclusion would be the same.

"identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407. An objective standard is used to determine whether the state court's decision was reasonable. *Id*. at 409.

## DISCUSSION

We begin by addressing Ford's allegation that the Michigan Court of Appeals denied him his Fourteenth Amendment right to due process and his Sixth Amendment right to confrontation by unreasonably concluding that the trial court's admission of hearsay statements made by Temple was harmless error.

Specifically, Ford challenges the admission of Temple's statements, through the testimony of Temple's wife, Leila Gregory. Gregory testified that on the night before the robbery Temple told her that he and Ford had just stolen a car, and on the morning of the robbery he said he was going to meet Ford and that she would not "want for anything ever again." Initially, the trial court ruled that these statements were inadmissible hearsay, which prevented the prosecutor from eliciting this testimony from Gregory on direct examination. Later in the trial when Sergeant Sanders testified for the prosecution, defense counsel questioned him as to whether the investigation of Ford was the result of statements made to police by Gregory, apparently attempting to show that Gregory's bias toward Ford had somehow tainted the investigation. On redirect examination of Sanders, the prosecutor elicited testimony from the officer that Gregory had told him of Ford's involvement in the car theft. The trial court then ruled that the statements by Temple were admissible for the non-hearsay purpose of showing why the police suspected Ford and stated that a limiting instruction would be given to the jury as to the appropriate use of this evidence. Gregory was then recalled to the stand where she testified to Temple's statements concerning Ford's

involvement in the preparation and perpetration of the robbery. The trial court never gave the limiting instruction and the prosecutor in closing argument used Temple's statements as evidence of Ford's guilt.

The Michigan Court of Appeals held that although the trial court had properly admitted the statements for a non-hearsay purpose, it had erred by failing to provide a limiting instruction and allowing the jury to consider the statements as substantive evidence of Ford's guilt. The court, however, went on to find that these statements were merely cumulative evidence, and, therefore, the error was harmless. Ford alleges that the Michigan Court of Appeals' conclusion that this trial error was harmless was an objectively unreasonable application of *Chapman v. California*, 386 U.S. 18, 24 (1967). To support this argument, Ford contends that the appellate court reviewed the evidence superficially and overlooked the key defense position that the second perpetrator was someone other than Ford.

The standard for showing harmless error on collateral review is considerably less favorable to the petitioner than the standard applicable on direct review. On direct review, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* The test on collateral review is different. We must order reversal only when a trial error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Under this standard, Ford is not entitled to habeas relief unless he can establish that this trial error resulted in "actual prejudice." *Id.* (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).

Applying the *Brecht* standard, we find that the trial court's failure to provide a limiting instruction for admitted hearsay