No. 04–386. BELL, WARDEN *v.* QUINTERO. C. A. 6th Cir. Motion of respondent for leave to proceed *in forma pauperis* granted. Certiorari denied.

JUSTICE THOMAS, with whom THE CHIEF JUSTICE joins, dissenting.

In this case, the Court of Appeals for the Sixth Circuit held that respondent Derrick Quintero was entitled to federal habeas

relief from his state-court conviction for escaping from prison. Because the Court of Appeals failed to follow this Court's decision in *Bell* v. *Cone*, 535 U. S. 685 (2002), I would grant the warden's petition for certiorari and reverse.

Respondent was convicted in Kentucky state court of escaping from prison with two other inmates. The jury to which the Commonwealth tried him included seven members who had served on a jury that had convicted one of the other escapees, Billy Hall. Respondent's trial counsel represented Hall at Hall's trial, which was held on October 16, 1989. Final Brief for Petitioner/Appellee in No. 99–6724 (CA6), p. 7.

Respondent was tried almost two months later, on December 11, together with the other escapee, James Blanton. Respondent and Blanton both admitted their factual guilt; their only defense was that the escape was a necessary "choice of evils," because they were in imminent danger of physical harm while in prison. Pet. for Cert. 5. The trial judge rejected that defense as a matter of law and declined to submit it to the jury. Respondent did not object to the composition of the jury on the ground that it contained jurors who had participated in Hall's trial and therefore, as a matter of state law, forfeited any claim of error based on that ground.

Respondent sought federal habeas relief, claiming that the trial had infringed his constitutional right to an impartial jury. Respondent argued that his counsel's failure to object to the composition of the jury was ineffective assistance of counsel, thereby excusing his forfeiture of the jury-bias claim. The Court of Appeals agreed and excused the procedural default, holding that counsel's failure to object constituted *per se* ineffective assistance of counsel under *United States* v. *Cronic*, 466 U. S. 648 (1984). *Quintero* v. *Bell*, 256 F. 3d 409, 413–415 (CA6 2001). *Cronic* established that certain failings of counsel justify a *per se* presumption of ineffectiveness, see 466 U. S., at 658–659, notwithstanding the general rule that to demonstrate ineffectiveness, a defendant must show that his counsel's performance was both deficient and prejudicial, see *Strickland* v. *Washington*, 466 U. S. 668, 687 (1984).

The Court of Appeals did not claim that counsel's failure to object to the composition of the jury fell into one of the three categories of error that *Cronic* recognized. See *Cone, supra,* at 695–696 (discussing *Cronic*'s three categories). Instead, it rea-

soned that *Cronic* applied because the biased jury was a "structural error" exempt from harmless-error analysis, depriving the trial of "'its character as a confrontation between adversaries.'" *Quintero, supra,* at 415 (quoting *Cronic, supra,* at 657). Reaching the merits, the Court of Appeals held that the state-court trial had violated respondent's constitutional right to an impartial jury, and affirmed the District Court's decision to grant respondent a conditional writ of habeas corpus. *Quintero, supra,* at 412–413, 416.

We granted the warden's petition for certiorari, vacated the Court of Appeals' judgment, and remanded the case in light of *Bell* v. *Cone, supra. Bell* v. *Quintero,* 535 U. S. 1109 (2002). In *Cone,* we reversed a Sixth Circuit decision that had misapplied *Cronic. Cone* involved a habeas petitioner who had been convicted of capital murder and sentenced to death. At the penalty phase of petitioner's trial, petitioner's lawyer called the jury's attention to mitigating evidence that had been presented to it during the guilt phase of the trial, showing petitioner's disturbed mental state and drug addiction. 535 U. S., at 691. Nevertheless, the Court of Appeals concluded that counsel had failed to subject the case to "'meaningful adversarial testing'" at the penalty phase—one of the three recognized examples of *Cronic* error, see 535 U. S., at 695–696—because counsel had failed to present additional mitigating evidence, and because counsel had waived final argument. *Cone* v. *Bell,* 243 F. 3d 961, 979 (2001) (quoting *Cronic, supra,* at 656). We reversed, reasoning:

> "When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said 'if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.' *Cronic, supra,* at 659 (emphasis added). Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole; but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic,* this difference is not of degree but of kind." 535 U. S., at 696–697.

After we vacated and remanded its judgment in light of *Cone,* the Court of Appeals in the decision below again held that re-

spondent's attorney had committed *Cronic* error. It reasoned that "counsel's acquiescence in allowing seven jurors who had convicted [respondent's] co-conspirators to sit in judgment of his case surely amounted to an abandonment of 'meaningful adversarial testing' *throughout* the proceeding," and therefore was *per se* ineffective assistance of counsel under *Cronic.* 368 F. 3d 892, 893 (CA6 2004) (quoting *Cronic, supra,* at 659; emphasis in original). For this reason, the Court of Appeals found the present case distinguishable from *Cone,* once again excused respondent's procedural default, and reinstated its previous opinion and judgment. 368 F. 3d, at 893.

The Court of Appeals committed the same error we corrected in *Cone.* It held that respondent's counsel failed to subject his case to meaningful adversarial testing. Yet our decision in *Cone* makes clear that for a court to "presum[e] prejudice based on an attorney's failure to test the prosecutor's case, . . . the attorney's failure must be complete." 535 U. S., at 697; accord, *Florida* v. *Nixon,* 543 U. S. 175, 190 (2004); *French* v. *Jones,* 332 F. 3d 430, 439 (CA6 2003). Here, counsel's failure was far from complete. Respondent's attorney extensively questioned the veniremen for prior knowledge and bias, put on a necessity defense, cross-examined the Commonwealth's witnesses, made numerous motions and objections, and delivered a closing statement.* As in

---

*See *Quintero* v. *Bell,* 256 F. 3d 409, 411 (CA6 2001); State Tr. of Evidence 8 (objecting to respondent's shackling); *id.,* at 11–12 (objecting to respondent's prison clothing); *id.,* at 15–16 (moving for recusal of the prosecutor); *id.,* at 18–20 (moving for individual *voir dire* of the veniremen to avoid taint from pretrial publicity); *id.,* at 29–31, 40 (asking veniremen whether they could be impartial, notwithstanding pretrial publicity surrounding the case); *id.,* at 30 (asking that venireman be excused because she expressed bias); *id.,* at 33 (asking if any of the veniremen had seen respondent before); *id.,* at 34–35 (requesting that venireman be excused because she was related to a prosecutor); *id.,* at 36 (moving for a mistrial because many of the veniremen had heard about the escape incident); *id.,* at 37–38 (asking that veniremen be excused because they had prior knowledge of the escape); *id.,* at 39 (asking veniremen if they were related to the prosecutors); *id.,* at 41–42 (moving to dismiss venireman affected by the escape); *id.,* at 43 (asking veniremen if they were related to law enforcement personnel); *id.,* at 51–54, 69–73, 76–78 (cross-examining witnesses); *id.,* at 79, 83–84 (calling respondent to the stand and examining him); *id.,* at 96, 99–100 (calling respondent's codefendant to the stand and examining him); *id.,* at 110–111 (conducting redirect examination of respondent's codefendant); *id.,* at 112–114 (calling a prison medical technician to the stand and examining her); *id.,* at 116 (re-

*Cone*, "respondent's argument is not that his counsel failed to oppose the prosecution throughout the [case] as a whole, but that his counsel failed to do so at specific points"—namely, at the specific point of jury selection. 535 U. S., at 697. The notion that this discrete error amounts to a complete failure of meaningful adversarial testing is flatly inconsistent with *Cone*'s analysis, though it does resemble the reasoning of the lone *Cone* dissenter. See *id.*, at 716–717 (opinion of STEVENS, J.) (concluding that when an error "concern[s] 'points' that encompass all of counsel's fundamental duties at a capital sentencing proceeding . . . counsel *has* failed 'entirely'" (emphasis in original)).

The Court of Appeals' holding also rests on a confusion—the idea that the presence of a structural error, by itself, is necessarily related to counsel's deficient performance and warrants a presumption of prejudice. The *Cronic* presumption is based on the notion that certain "circumstances . . . are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." 466 U. S., at 658. Those exceptional circumstances encompass instances in which counsel's poor performance caused the defendant prejudice, not any prejudicial circumstance whatsoever. See *Cone, supra*, at 695–696 (enumerating examples of *Cronic* error, all involving circumstances related to whether counsel's assistance was ineffective). Yet there is no close correlation between counsel's performance and whether a trial was infected with structural error, much less one so close as to justify a presumption that counsel was ineffective. For example, even competent counsel may fail to object to a biased trial judge or to the exclusion of grand jurors on the basis of the defendant's race. The structural nature of these defects, see *Tumey* v. *Ohio*, 273 U. S. 510, 535 (1927); *Vasquez* v. *Hillery*, 474 U. S. 254, 262 (1986), says only that a serious error infected the trial, not that the error resulted from counsel's ineffective assistance.

The Court of Appeals' reasoning equally would apply even if counsel's failure to object to the biased jurors were blameless and the quality of his assistance high. See *Quintero*, 256 F. 3d, at 415. Even a competent defense lawyer may not have known that the jurors had served previously, for example, if the veniremen

questing jury instruction on necessity defense); *id.*, at 118–125 (closing statement); *id.*, at 131 (moving for partial dismissal of the indictment); *id.*, at 146–147 (closing statement at penalty phase).

were not forthcoming at *voir dire*. It is no answer to say that it is obvious that counsel in this case *should* have objected to the composition of the jury; the whole point of the *Cronic* presumption is to presume ineffectiveness *without* inquiring on a case-by-case, error-by-error basis into the wisdom of counsel's actual performance (and any resulting prejudice) under *Strickland*. The fact that respondent had a potentially biased jury may well be a serious trial error. But it is not an error that warrants the *per se* conclusion that his counsel was constitutionally ineffective.

It is also far from clear on the present record that counsel's failure to object to the biased nature of the jury was blameworthy. The Court of Appeals based its holding that counsel was ineffective on the implicit supposition that he knew that the seven jurors had previously served, yet failed to object to their presence. *Quintero, supra*, at 415. That assumption is not clearly correct. Almost two months elapsed between the trial of respondent's coescapee, Billy Hall, and respondent's trial. Respondent's counsel was a public defender, and in the shuffle of a heavy caseload may well have forgotten the names and faces of the seven jurors who had served previously. Moreover, counsel extensively questioned the veniremen about possible bias, asked that veniremen be disqualified because they had prior knowledge of the case, and moved for a mistrial on the ground that the entire jury was tainted by pretrial publicity. See *supra*, at 939–940, n. Counsel's concern with these sources of jury bias is hard to square with the hypothesis that he knew that seven members of respondent's jury had served on Hall's jury, yet ignored such an obvious source of jury bias. In any event, counsel's performance may well have been deficient, but this lingering factual uncertainty illustrates the danger of presuming—over a decade after the fact and based on nothing more than a federal appellate court's reading of the cold record—that counsel's failure to object was *per se* constitutionally ineffective.

\* \* \*

The Court of Appeals' decision is one of three Sixth Circuit judgments that we vacated and remanded in light of *Cone*. See *Quintero*, 535 U. S. 1109; *Mason* v. *Mitchell*, 536 U. S. 901 (2002); *Jones* v. *French*, 535 U. S. 1109 (2002). In all three, the Sixth Circuit reinstated its previous opinion and again ordered the writs granted. See 368 F. 3d, at 893 (case below); *Mitchell* v. *Mason*,

325 F. 3d 732, 742–744 (2003) (again finding *Cronic* error); *French* v. *Jones*, 332 F. 3d, at 436–439 (same). In *Cone* itself, the Sixth Circuit reinstated its order affirming the grant of the writ, albeit on grounds independent of *Cronic*. See *Cone* v. *Bell*, 359 F. 3d 785, 799 (2004). These decisions were all dubious applications of this Court's precedents. See *Bell* v. *Cone*, 543 U. S. 447, 459–460 (2005) *(per curiam)* (summarily reversing); *Mitchell*, 325 F. 3d, at 748–749 (Carr, J., dissenting); Pet. for Cert. in *Jones* v. *French*, O. T. 2003, No. 03–522. The Court's decision to deny the warden's petition in the present case, of course, says nothing about whether the Court of Appeals' reasoning was correct. See, *e. g., Foster* v. *Florida*, 537 U. S. 990 (2002) (opinion of STEVENS, J., respecting denial of certiorari). But in view of this series of questionable applications of our precedent, especially of our first *Cone* opinion, I would correct the Court of Appeals' latest error. I therefore respectfully dissent.