RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0089p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

DAVID WAYNE ALLEN,

           *Petitioner-Appellant*,

    *v.*

BETTY MITCHELL, Warden,

           *Respondent-Appellee*.

No. 02-4145

─────────────────

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-01067—Paul R. Matia, District Judge.

Argued:  October 15, 2019

Decided and Filed:  March 24, 2020

Before:  SILER, MOORE, and BUSH, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  John J. Ricotta, Cleveland, Ohio, for Appellant.  Brenda S. Leikala, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.  **ON BRIEF:**  John J. Ricotta, Cleveland, Ohio, Henry J. Hilow, Cleveland, Ohio, for Appellant.  Charles L. Wille, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellee.

    BUSH, J., delivered the opinion of the court in which SILER, J., joined.  MOORE, J. (pp. 12–22), delivered a separate opinion concurring only in the judgment.

---

**OPINION**

---

JOHN K. BUSH, Circuit Judge.  David Wayne Allen was convicted of aggravated robbery and aggravated murder in 1991.  He was sentenced to death.  Allen's present appeal seeks review of the district court's denial of a writ of habeas corpus under 28 U.S.C. § 2254.  Allen argues that the trial court in the Ohio state proceedings violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments by failing to excuse a juror who demonstrated she could not be fair and unbiased.  Because our review of a denial of habeas corpus under the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254, imparts a great level of deference to state court factual determinations, and because the determination of whether to seat a juror is an exercise of discretion by the trial court, we **AFFIRM** the district court's denial of Allen's petition for a writ of habeas corpus.

**I.**

David Wayne Allen was convicted of aggravated robbery and aggravated murder for the death of 84-year-old Chloie English, whom he knew through a prison ministry program.  English was found stabbed, beaten, and strangled to death in her home.  Allen's thumbprint was found on the inside of one of the lenses of England's glasses, and cigarette butts consistent with Allen's brand (Dorals) and saliva (type O secretor) were found in English's trash can.  The coroner put English's time of death at between midnight and six a.m. on January 25, 1991.  A bus driver remembered picking up Allen near English's home a little after six in the morning on that same date.  Later that year Allen was convicted of all charges and sentenced to death.  The Ohio Court of Appeals affirmed Allen's convictions and sentence in 1993, *State v. Allen*, No. 62275, 1993 WL 366976 (Ohio Ct. App. Sept. 9, 1993), and the Ohio Supreme Court affirmed in 1995, *State v. Allen*, 653 N.E.2d 675 (Ohio 1995).  The Ohio Supreme Court denied Allen's application to reopen his direct appeal.  *State v. Allen*, 672 N.E.2d 638 (Ohio 1996) (per curiam).  Allen filed a petition for post-conviction relief in September 1996.  The trial court denied the petition without an evidentiary hearing, and the Ohio Court of Appeals affirmed.  *State v. Allen*, No. 72427, 1998 WL 289418 (Ohio Ct. App. June 4, 1998).

Allen first filed a petition for a writ of habeas corpus in 1999.  The district court denied the petition in 2002, and granted Allen a certificate of appealability as to his claim that a biased juror served on the jury.  In April 2006, Allen filed a motion to hold briefing in abeyance pending the completion of DNA analysis.  This court granted the motion.  The state court proceedings concluded in 2017, when the Ohio Supreme Court denied review of the denial of Allen's motion for a new trial.  *State v. Allen*, 82 N.E.3d 1175 (Ohio 2017) (table).

We denied Allen's motion to expand the certificate of appealability to include a *Brady* claim and a claim for ineffective assistance of counsel.  We also denied Allen's petition for rehearing, and set a briefing schedule.  *Allen v. Mitchell*, 757 F. App'x 482 (6th Cir. 2018).

Allen's habeas petition now before us alleges that he was denied the right to a fair trial and due process of law because Patricia Worthington, one of the jurors who sat at his capital trial, initially indicated during voir dire that she was not sure that she could be fair and impartial.  To address Allen's argument, we review the full context of Worthington's statements to the trial court.

Before voir dire, the trial court told prospective jurors to let the bailiff know if they had a specific problem with serving on the jury.  Worthington told the trial court her brother had been shot and killed two years earlier.  The trial court explained that it was inquiring about issues like physical disabilities or other reasons someone could not serve, and that it would address other issues—such as moral or philosophical reasons as to why one could not serve on the jury—in general voir dire.

The trial court then conducted a general voir dire to determine if any potential jurors had any moral or philosophical beliefs that would impair their ability as jurors at the sentencing phase. When Worthington was called, the trial court asked her if she had "any philosophical, moral, or religious beliefs that would prevent or substantially impair her ability to accept the court's instructions of law with regard to sentencing," and, if Allen was convicted, to recommend the death penalty, or life imprisonment without parole for twenty or thirty years.  Worthington responded no to this inquiry.

However, during her individual voir dire, Worthington initially expressed some hesitation as to whether she could be an impartial juror.  She told the trial court that the man charged with

murdering her brother was acquitted and she did not feel justice was done.  She agreed with the trial court's suggestion that she had some feelings of bitterness and resentment because of the outcome of the trial.  The trial court asked her if she could set aside those feelings and reach a verdict based solely on the evidence that came out in open court, and Worthington said she could.

She also disclosed that two of her friends were police officers, and that she got to know a detective and the prosecutor from her brother's case.  The detective and the prosecutor from her brother's case kept in contact with her mother.  Worthington told the prosecutor she would try to set aside the experience of her brother's case and evaluate Allen's case solely on the evidence, follow the law as instructed, and come to a fair and impartial verdict.  Allen's counsel stated that witnesses from the coroner's office who testified at her brother's trial would testify at Allen's trial, and asked Worthington whether she would be able to hold back an emotional response to their testimony.  Worthington said she did not know whether she could, because her brother's trial was too recent.  She agreed that she was a little bit anxious but denied that her reaction to hearing some of the same kind of evidence from some of the same witnesses might substantially impact her ability to concentrate on Allen's case.

Allen—who had exhausted the last of his peremptory strikes—challenged Worthington for cause.  He argued that, because the trial of the person accused of murdering her brother was close in time to Allen's trial and Worthington was familiar with the witnesses and type of testimony, she would be emotionally involved and was not detached.  The trial court found that Worthington "unequivocally stated that she could be fair and impartial. . . . [T]he jury [sic] was very straightforward.  She understands the responsibility here and I don't see a problem with her serving." R. 189-15, at *219.  The trial court denied Allen's motion, and Worthington was called to fill the twelfth spot on the jury.

The Ohio Supreme Court, in a four-to-three ruling, affirmed the trial court's decision to seat Worthington.  *Allen*, 653 N.E.2d at 681.  The court held that the trial court's finding that Worthington was unbiased was supported by her testimony, and that the trial court could legitimately validate her statements because it saw and heard her.  *Id.*  Three justices dissented, asserting that Worthington should have been excused for cause.  *Id.* at 691–92 (Wright, J., dissenting).

The district court denied Allen's habeas claim on the merits. The court found that Worthington showed some reluctance about being a juror, but stated repeatedly that her brother's murder and trial would not impact her decision in Allen's case. R. 189-23 at PageID 45. The court concluded that, because nothing in the record overtly indicated bias against Allen or an inability to act impartially, it was required to defer "to the trial judge who sees and hears the juror." *Id.* at 45–46 (quoting *Wainwright v. Witt*, 469 U.S. 412, 426 (1985)). The district court held that the Ohio Supreme Court did not unreasonably apply established Supreme Court precedent. *Id.* at 46. Allen filed a timely appeal.

## II.

We review a district court's denial of a habeas petition de novo. *See Cleveland v. Bradshaw*, 693 F.3d 626, 631 (6th Cir. 2012). The district court's findings of fact are reviewed for clear error, and its legal conclusions on mixed questions of law and fact are reviewed de novo. *See Gumm v. Mitchell*, 775 F.3d 345, 359–60 (6th Cir. 2014). "[T]he habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings were correct." *Henley v. Bell*, 487 F.3d 379, 384 (6th Cir. 2007) (citing 28 U.S.C. § 2254(e)(1)) (other citations omitted).

We review this case through two deferential lenses. First, because the determination of juror impartiality is "essentially one of credibility, . . . the trial court's resolution of such questions is entitled . . . to special deference." *Patton v. Yount*, 467 U.S. 1025, 1038 (1984) (internal quotations omitted). Second, review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Under AEDPA, if a state court has adjudicated the petitioner's claims on the merits, a writ of habeas corpus may not be granted unless the state court's adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660–61 (2004) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A decision of the state court is an "unreasonable application" when "the state court identifies the correct governing legal rules from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Hill v. Hofbauer*, 337 F.3d 706, 711 (6th Cir. 2003) (quoting *Williams*, 529 U.S. at 407). A federal court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Under this deferential standard, we do not ask "whether the state court's determination was incorrect, but rather whether fair-minded jurists could disagree about whether the state court's decision conflicts with existing Supreme Court caselaw." *Dewald v. Wriggelsworth*, 748 F.3d 295, 301 (6th Cir. 2014) (citing *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

Further, state-court factual determinations must stand unless they are objectively unreasonable in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2); *Harrington*, 562 U.S. at 100. A federal habeas court may not characterize state-court factual determinations as unreasonable "merely because [we] would have reached a different conclusion in the first instance." *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (alteration in original) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).

**III.**

Allen makes two arguments as to why he is entitled to habeas relief. First, he asserts that the trial court's decision to empanel juror Worthington deprived him of his Sixth Amendment right to a trial by an impartial jury. Second, he maintains that his Sixth Amendment right to a trial by an impartial jury was violated because the trial court failed to ask constitutionally compelled questions during Worthington's voir dire. We address each argument in turn.

## A.

The Sixth Amendment grants criminal defendants "[a] right to a speedy and public trial, by an impartial jury. . . .", U.S. Const. amend. VI.  An adequate voir dire is part of that guarantee. *See Morgan v. Illinois*, 504 U.S. 719 726–27 (1992).  The party seeking to exclude a juror because of bias must demonstrate that the potential juror lacks impartiality.  *Wainwright v. Witt*, 469 U.S. 412, 423 (1985).  When a juror's impartiality is at issue, the pertinent question is whether the juror swore "that [she] could set aside any opinion [she] might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount*, 467 U.S. 1025, 1036 (1984).  The trial court's resolution of these questions is a matter of historical fact which is entitled to a presumption of correctness under 28 U.S.C. § 2254(d)(2).  *Id.* at 1036–38; *see Williams v. Bagley*, 380 F.3d 932, 944 (6th Cir. 2004) *see also Wainwright*, 469 U.S. at 426 (noting that in determining whether a juror is biased, "deference must be paid to the trial judge who sees and hears the juror").  Therefore, a trial court's finding of impartiality may be overturned only for "manifest error." *Hill v. Brigano*, 199 F.3d 833, 843 (6th Cir. 1999) (quoting *Patton*, 467 U.S. at 1031).  The question for this Court is simply "whether there is fair support in the record for the state court's conclusion that the juror[] here would be impartial," *Patton*, 467 U.S. at 1038, not whether it was right or wrong in its determination of impartiality.  *Wainwright*, 469 U.S. at 424.

Although jurists on the Ohio Supreme Court disagreed on the issue of whether Worthington should have been seated as a juror, we cannot say that the decision of the majority of the Ohio Supreme Court was based an unreasonable application of clearly established law or an unreasonable determination of the facts under the AEDPA standard.  It is arguable that the trial court may have overstated Worthington's testimony when it found that she unequivocally stated that she could be fair and impartial.  Her responses were somewhat unclear and equivocal, and she expressed dissatisfaction with the result of her brother's murder trial.  Worthington noted that she got to know a detective and a prosecutor from her brother's case, and that the detective and prosecutor kept in touch with her mother.  But nonetheless, Worthington said she could set aside her feelings, decide the case based only on the evidence presented in court, follow the law as instructed, and come to a fair and impartial verdict.  Worthington acknowledged she did not know

if she could control her emotions upon hearing the testimony of witnesses from the coroner's office, some of whom also testified at Worthington's brother's murder trial. She denied, however, that hearing this evidence would substantially impact her ability to concentrate on Allen's case.

Even when a potential juror's statements during voir dire are ambiguous, we still defer to the trial court's ruling in the absence of clear record evidence to the contrary. *See Patton,* 467 U.S. at 1039–40 (noting that "while the cold record arouses some concern, only the trial judge could tell which of these answers was said with the greatest comprehension and certainty"). It was not unreasonable for the Ohio Supreme Court to accord such deference in Allen's case.

In *White v. Mitchell*, we granted a writ of habeas corpus when a state court failed to strike a juror who, although she affirmed that she could be impartial, was nonetheless "unable to lay aside her impression or opinion and render a verdict based on the evidence presented in court." 431 F.3d 517, 542 (6th Cir. 2005) (cleaned up). Though the juror constantly used words such as "fair," "truth," and "honesty," that alone did not make her an impartial juror when the totality of the circumstances suggested that she "had a strong inclination toward imposing the death penalty, . . . [and] that she was looking forward to participating in the imposition of this particular defendant's sentence." *Id*. at 541–42. Notwithstanding the deference we normally afford to trial judges, there the transcript revealed that the juror was "simply unbelievable as an impartial juror." *Id*. at 542. The transcript reflected "internally inconsistent and vacillating" statements, "including statements of strong doubt regarding impartiality and merely a few tentative or cursory statements that she would be fair." *Id*.

By contrast, here, nothing in the record indicates any bias against the defendant. The record shows that Worthington was truthful in her responses. Though she was certainly hesitant and sometimes equivocal in her answers, her voir dire revealed a juror who thought through her views aloud and, in the end, stated that she could be a fair and impartial juror. Without anything in the record clearly demonstrating Worthington's inability to act impartially, or raising serious concerns about whether her statements of impartiality should be believed, we must defer to the trial court. *Wainwright*, 469 U.S. at 426. Indeed, in order to grant a writ, a habeas court must conclude that the trial court's credibility findings "lacked even fair support in the record." *Patton*, 467 U.S. at 1037 (cleaned up). And Worthington stated time and time again that she could be a fair and

impartial juror. *See, e.g., Miller v. Francis*, 269 F.3d 609, 618–19 (6th Cir. 2001) (noting that "the trial court cannot be faulted for not disqualifying for cause a juror who consistently says she thinks she can be fair"). The Ohio Supreme Court determined on direct appeal: "[T]he trial court found Worthington unbiased, a finding supported by Worthington's testimony. Allen argues that the juror's belief in her own impartiality is insufficient support, but the trial court saw and heard Worthington and could legitimately validate her statements." *State v. Allen*, 653 N.E.2d 675, 681 (Ohio 1995).

The Ohio Supreme Court's ruling—that the trial court did not abuse its discretion in empaneling Worthington—was neither contrary to clearly established federal law, nor based on an unreasonable determination of the facts. Consistent with directives from the U.S. Supreme Court, the trial court examined Worthington to determine if she was impartial. After Worthington stated several times that she could set aside her feelings from her brother's case and decide Allen's case based on the facts, the trial judge found that Worthington could be an impartial juror and empaneled her. Especially in light of the special deference owed to the trial court's determination of juror impartiality as well as the deferential standard for reviewing factual findings under § 2254, we cannot say that the Ohio Supreme Court's ruling on this issue was an unreasonable application of clearly established federal law or an unreasonable determination of the facts.

**B.**

Allen also claims that the trial court's voir dire of Worthington was inadequate because the trial court failed to ask her how the trial concerning her brother's murder would affect her ability to follow the court's instructions impartially, evaluate the evidence, and impose the death penalty. He contends that a reasonable jurist would suspect that Worthington had the potential to seek vengeance for her brother's murder, and possibly be an "automatic death penalty juror." Pet'r Br. at 8. Allen, however, did not raise this argument on direct appeal to the Ohio Supreme Court, nor did he raise it in his habeas petition.

Principles of comity require that we not seek to upset a state court conviction on the basis of an alleged constitutional violation that the state court never had an opportunity to correct. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982). "Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Lyons v. Stovall*, 188 F.3d 327, 331–32 (6th Cir. 1999) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)). "[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review." *Awkal v. Mitchell*, 613 F.3d 629, 646 (6th Cir. 2010) (en banc) (quoting *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002)). Allen never argued before the state courts that the trial court's voir dire of Worthington was inadequate because it failed to ask a constitutionally compelled question. Though this argument is defaulted, in any event we find it would be meritless.

An adequate voir dire to identify unqualified jurors is integral to the right to trial by an impartial jury. *See Morgan*, 504 U.S. at 729. When a state court refuses to pose "constitutionally compelled" questions, the voir dire is inadequate and merits habeas relief. *Mu'Min v. Virginia*, 500 U.S. 415, 425–26 (1991). "Questions are constitutionally compelled only if 'the trial court's failure to ask these questions . . . render[s] the defendant's trial fundamentally unfair." *Hodges v. Colson*, 727 F.3d 517, 527 (6th Cir. 2013) (quoting *Mu'Min*, 500 U.S. at 425–26).

Allen has not shown that his trial was fundamentally unfair because of the trial court's failure to ask how her brother's trial would impact her ability to impose the death penalty. The trial court asked Worthington whether she could set aside her feelings from her brother's case and reach a verdict based solely on the evidence that came out in open court. She said she could. The trial court asked Worthington whether she had any beliefs that would prevent her from following the trial court's sentencing instructions. She said no. Finally, the trial court asked Worthington whether she could follow the court's instructions of law and recommend an appropriate sentence, be it the death penalty or life imprisonment without parole for 20 or 30 years. She said she could. Nothing in Worthington's responses suggested that her feelings about her brother's murder meant she would automatically recommend the death penalty if the jury convicted Allen. *See Morgan*, 504 U.S. at 735–36 (holding that an adequate voir dire requires a defendant to be able to determine

whether a juror would automatically vote for the death penalty). The trial court's voir dire of Worthington did not deprive Allen of a fundamentally fair trial.

**IV.**

For these reasons, we AFFIRM the district court's judgment denying Allen's petition for a writ of habeas corpus.

---

**CONCURRING IN THE JUDGMENT**

---

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. I agree that we must affirm the district court's denial of petitioner David Allen's 28 U.S.C. § 2254 petition because our review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") is restricted. I concur only in the judgment, however. In *Patton v. Yount*, the Supreme Court fashioned a two-part inquiry for juror-bias claims: "did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, *and should the juror's protestation of impartiality have been believed*." 467 U.S. 1025, 1036 (1984) (emphasis added). The majority skips the second part of the inquiry, which requires analyzing the full context of juror Patricia Worthington's voir dire, including its most disconcerting aspects. Whether the state court was unreasonable in concluding that Worthington was not biased is a difficult and close question, and were we on direct review, I would conclude that Allen's claim warrants relief. Nevertheless, careful consideration of Supreme Court precedent and our cases granting habeas relief on juror-bias claims and ineffective-assistance-of-counsel claims relying on counsel's failure to strike biased jurors demonstrates that Allen cannot meet AEDPA's high bar.

In a case that turns upon a juror's voir dire responses, it is crucial to provide the responses themselves. The relevant exchanges between the trial court, the prosecution, and the defense with Worthington, therefore, are provided here.

Allen was tried and sentenced in June and July 1991. Once the prospective jurors were duly sworn, the state trial court invited them to come forward with "specific," "personal problem[s] with regard to jury service," which the trial court meant to refer to disabilities, work conflicts, and prearranged trips. *See* R. 189-14 (Voir Dire Tr. at 130–45). At this time, Worthington came forward:

> The Court: Mrs. Worthington, you've indicated you have some problem with service. Could you tell us about that?
>
> Ms. Worthington: Well, I didn't know it was a criminal case. My brother, he was shot and killed about two years ago in the middle of the street on 75th and Kinsman.

The Court: Okay.  Right now we're dealing with issues relating to people who have a physical disability or some type of reason why they can't serve.  Those issues we'll address in general voir dire.

Ms. Worthington: Okay.

The Court: Okay.  Thank you.

*Id.* at 141–42.

During general voir dire, the twelfth juror was stricken upon Allen's last peremptory challenge, and the trial court began to question Worthington.  R. 189-15 (Voir Dire Tr. at 449). Eventually, the murder of Worthington's brother was addressed.

The Court:  Have you, your family members, or close friends ever been the victim of a crime or accused of a crime?

Ms. Worthington:  Yes.

The Court:  And could you tell me about that?

Ms. Worthington:  My brother was shot and killed at 75th and Kinsman in 1986.

The Court:  Was anyone ever arrested or prosecuted for that offense?

Ms. Worthington:  Yes.

The Court:  What's your brother's name?

Ms. Worthington:  Stephen Rogers.

The Court:  Was there a trial held with regard to that shooting?

Ms. Worthington:  Yes.

The Court:  Were you called as a witness in any way with regard to that case?

Ms. Worthington:  No.  But I was in court every day.

The Court:  Do you feel that justice was done during the course of that case?

Ms. Worthington:  No.

The Court:  Would it be fair to say that you have some feelings of bitterness and resent[ment] because of the outcome of that trial and what happened in that case?

Ms. Worthington:  Yes.  Because he was found not guilty.

The Court:  I certainly understand your feelings about that particular case and I feel very sorry for you and your family.  Do you think you can set aside those feelings of bitterness from your experiences there and evaluate this defendant and reach a verdict with regard to this defendant based solely on the evidence that comes out in open court?

Ms. Worthington:  Yes.  Because the prosecution did everything that they could.

The Court: You're talking about your other case?

Ms. Worthington: Yes, my brother's.

The Court: And I'm sure counsel for the defense will ask you some questions in this area, as well. And it's very hard to get 100 percent assurance on anything, but you understand how important it is at this time to let us know if you can't do this.

Ms. Worthington: Yes.

The Court: And you'll let me know or the prosecutor or the defense attorney if you feel you're not up to serving on this particular case?

Ms. Worthington: Yes.

The Court: I'm not trying to browbeat you one way or the other. Okay?

Ms. Worthington: Okay.

*Id.* at 450–53. Worthington also stated that she had two friends who were Cleveland police officers and that she knew the detective and prosecutor in her brother's case. *Id.* at 453–54.

After this exchange, the prosecution and the defense questioned Worthington. The following questions and answers are between the prosecutor and Worthington:

[Prosecutor]: And from what I understood you to say to the Judge was that in spite of what happened back in –was it [19]86?

Ms. Worthington: [19]88.

[Prosecutor]: [19]88. In spite of what happened there, that you will make every effort as humanly possible to set aside that experience and judge this case solely on whatever evidence is here. You'll forget what took place in the courtroom then and rely only on what takes place in the courtroom now; is that correct?

Ms. Worthington: Yes.

[Prosecutor]: And in doing so, you could follow the law that Judge Cleary will tell you the law is in this case, apply it to the evidence that you have heard in the courtroom, and come to what in your mind will be a fair and impartial verdict; you can do that?

Ms. Worthington: Yes.

*Id.* at 455–56. The prosecution did not challenge Worthington for cause. *Id.* at 456.

The defense then questioned Worthington, starting with her relationship with her two police-officer friends. At the time, Worthington had known these officer friends for ten years. *Id.* at 456–57. Worthington further stated that the prosecutor and detective in the trial for her brother's

murder continued to check up on her mother. *Id.* at 457–58. In response to defense counsel's later question whether her "mother lives someplace nearby," Worthington answered, "[y]es." *Id.* at 461. And in response to whether Worthington "ha[s] regular contact with her [mother]," Worthington answered, "[o]h, every day." *Id.* at 461–62.

Defense counsel also addressed the issue of Worthington's brother's murder and the subsequent trial:

> [Defense counsel]: You say you were down here every day during that trial.
>
> Ms. Worthington: Yes.
>
> [Defense counsel]: And you watched all the testimony?
>
> Ms. Worthington: Yes.
>
> [Defense counsel]: Obviously this is a different case. There's going to be different testimony. But as the prosecutor mentioned earlier, there are going to be some people here from the coroner's office . . . and there are going to be people from the trace evidence department at the coroner's office and they may be some of the same people that testified in your brother's trial. Do you remember the trace evidence people in your brother's trial?
>
> Ms. Worthington: Yes.
>
> [Defense counsel]: Now, when these people take the witness stand, are you going to be able to hold back any kind of an emotional rush that's going to occur when you see these ladies here testifying about the same kind of things they did in your brother's trial?
>
> Ms. Worthington: I don't know.
>
> [Defense counsel]: You don't know?
>
> Ms. Worthington: I can't say right now.
>
> [Defense counsel]: That could be a little bit of a problem for you, though, couldn't it?
>
> Ms. Worthington: Because it's too close.
>
> [Defense counsel]: It's pretty close?
>
> Ms. Worthington: It just happened.
>
> [Defense counsel]: I mean, even today you're . . . a little bit anxious about the fact that this is a capital homicide case and that was a pretty traumatic and awful thing in your life, wasn't it?
>
> Ms. Worthington: Yes.

[Defense counsel]:  Do you feel that it might substantially impact on your ability to develop complete concentration on this case, hearing some of the same kind of evidence from some of the same witnesses?

Ms. Worthington:  No.

[Defense counsel]:  You don't think it will impact on the case?

Ms. Worthington:  No.

*Id.* at 458–60.[1]

Upon defense counsel challenging Worthington for cause, the judge and the attorneys had a sidebar conference.  *Id.* at 462.  The judge listened to defense counsel's arguments to exclude Worthington for cause but ultimately rejected the challenge.  *See id.* at 462–64.  Defense counsel relied on the fact that Worthington's experience with her brother's case was too close in time, that she had familiarity with the evidence that would be presented, and that she was too emotionally involved to be detached, and defense counsel stressed that other jurors were available.  *See id.* at 462–63.  The trial judge stated that Worthington "when questioned, unequivocally stated that she could be fair and impartial.  Obviously, she's had a terrible tragedy in her family. . . . But the jury [sic] was very straightforward.  She understands the responsibility here and I don't see a problem with her serving." *Id.* at 463.  Allen had no remaining peremptory challenges, so Worthington was seated on the jury.

We review de novo a district court's denial of a habeas petition, as well as its factual determinations when, as here, its decision is based upon a transcript. *Holder v. Palmer*, 588 F.3d 328, 337 (6th Cir. 2009).  AEDPA provides that a federal court cannot grant habeas relief unless a state-court decision of a federal claim on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d). Under § 2254(d)(1), an unreasonable application of Supreme Court precedent "must be 'objectively unreasonable,' not

---

[1]Defense counsel attempted to ask, "[y]ou won't think back to your own family's case when you hear the trace evidence experts, for instance," but the state trial court sustained the prosecution's objection on relevancy grounds.  *Id.* at 461.  It is difficult to imagine what could have been more relevant to Worthington's ability to sit as a fair and impartial juror.

merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).**2** "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell,* 537 U.S. 322, 340 (2003) (citing § 2254(d)(2)).**3** This includes credibility determinations. *See Rice v. Collins*, 546 U.S. 333, 341–42 (2006). A state court's factual findings "are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340 (citing 28 U.S.C. § 2254(e)(1)).**4**

"The Sixth and Fourteenth Amendments to the Constitution guarantee a criminal defendant the right to be tried by impartial and unbiased jurors." *Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001) (citing *Morgan v. Illinois*, 504 U.S. 719 (1992)); *see also Irvin v. Dowd*, 366 U.S. 717, 722 (1961) ("In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors," and "[a] fair trial in a fair tribunal is a basic requirement of due process." (citation omitted)). The crucial question in juror-impartiality cases is "did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, *and should the juror's protestation of impartiality have been believed*." *Yount*, 467 U.S. at 1036 (emphasis added). The state trial court's determination about a juror's impartiality based on credibility and demeanor is given "special deference." *Id.* at 1038. "A trial court's findings of juror impartiality may 'be overturned only for "manifest error.""" *Mu'min v. Virginia*, 500 U.S.

---

**2**The state supreme court's decision did not explicitly characterize Allen's juror-bias claim as a constitutional claim, *see State v. Allen*, 653 N.E.2d 675, 680–81 (Ohio 1995), but we presume "that the state court adjudicated the claim on the merits [absent] any indication or state-law procedural principles to the contrary," *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018) (alteration in original) (quoting *Harrington v. Richter*, 562 U.S. 86, 99 (2011)). There is no such indication here. Allen presented his claim as a federal constitutional claim, R. 189-10 (Pet. Ohio Supreme Court Br. at 495–96), and the state supreme court appears to have treated the claim as one of juror bias, despite its reliance only on Ohio precedent regarding the standard for reviewing trial-court rulings on challenges for cause, *Allen*, 653 N.E.2d at 681; *see also id.* at 691 (Wright, J., dissenting) (characterizing the claim as a constitutional claim).

**3**The Ohio Supreme Court relied upon the state trial court's factual findings about Worthington's credibility, and so the proper subject of review pursuant to § 2254(d)(2) is the state trial court's factual findings. *See State v. Allen*, 653 N.E.2d 675, 681 (Ohio 1995); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (holding that federal habeas courts look to "the last related state-court decision" that adjudicated a petitioner's federal claim).

**4**The Supreme Court has not yet decided what the relationship is between subsections (d)(2) and (e)(1). *See Carter v. Bogan*, 900 F.3d 754, 768 n.5 (6th Cir. 2018).

415, 428–29 (1991) (quoting *Yount*, 467 U.S. at 1031). But even though "determinations of demeanor and credibility [ ] are peculiarly within a trial judge's province," juror-credibility determinations are "'factual issues' that are subject to" the statutory presumption of correctness. *Wainwright v. Witt*, 469 U.S. 412, 428–29 (1985) (referring to 28 U.S.C. § 2254(d) (1982)). In other words, a state trial court's juror-credibility determinations, despite the unique deference afforded to them, ultimately are like all factual determinations in that the "presumption of correctness" afforded to them on habeas review is rebuttable with clear and convincing evidence pursuant to § 2254(e)(1). *See Yount*, 467 U.S. at 1038; *Witt*, 469 U.S. at 427–30; *see also Williams v. Bagley*, 380 F.3d 932, 944 (6th Cir. 2004).[5]

First, Allen argues that the trial court's failure to dismiss Worthington deprived him of his constitutional right to an impartial jury, resulting in an unreasonable application of clearly established federal law pursuant to § 2254(d)(1). Second, he contends that "the trial court's decision not to dismiss Mrs. Worthington for cause was based on an unreasonable determination of the facts" in violation of § 2254(d)(2). Appellant Br. at 11–19.[6] Whether an unreasonable application of clearly established law or an unreasonable determination of fact, Allen cannot

---

[5]We must take great care in applying pre-AEDPA Supreme Court precedent, such as *Yount* and *Witt*, to habeas petitions governed by AEDPA. The majority states that § 2254(d)(2)'s presumption of correctness applies and provides the standard that the Supreme Court set forth in *Yount*: "whether there is fair support in the record for the state court's conclusion that the juror[ ] here would be impartial." Majority Op. at 7 (citing *Yount*, 467 U.S. at 1038). However, post-AEDPA, the presumption of correctness resides in § 2254(e)(1). And *Yount* drew its "fair support" language from the pre-AEDPA statute's presumption of correctness, 28 U.S.C. § 2254(d)(8) (1982), *see* 467 U.S. at 1038 (citing § 2254(d)(8) (1982)), which has been replaced with AEDPA. *See also* § 2254(d)(8) (1982) ("[A] determination after a hearing on the merits of a factual issue, made by a State court . . . , shall be presumed to be correct . . . unless that part of the record of the State court proceeding . . . is produced as provided for hereinafter, and the Federal court . . . concludes that such factual determination *is not fairly supported by the record* . . . ." (emphasis added)). *Yount* and *Witt* were decided with an earlier statutory framework for habeas petitions in mind. *See Witt*, 469 U.S. at 426, 430; *Yount*, 467 U.S. at 1038. Therefore, we must thoughtfully transpose their holdings to today's statutory framework. We have not always done so, at times dodging the issue by simply pointing to § 2254 as a whole and avoiding a statement of the standard for rebutting the presumption, *see, e.g.*, *Holder*, 588 F.3d at 339, and other times we have simply hedged our bets by citing § 2254(e)(1)'s presumption *and* quoting the "fair support" standard, *see, e.g.*, *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003). The Supreme Court has not yet clarified AEDPA's impact on *Witt* and *Yount*, nor the post-AEDPA standard for juror-impartiality claims.

[6]Allen also argues that the state trial court failed adequately to examine Worthington, *id.* at 15, but the majority's conclusion that Allen procedurally defaulted this claim is inescapable, Majority Op. at 9–10. Any further discussion as to the merits of Allen's claim is mere dictum. *See Richmond Health Facilities v. Nichols*, 811 F.3d 192, 201 n.8 (6th Cir. 2016) (defining dicta as "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." (*Obiter Dictum*, BLACK'S LAW DICTIONARY (10th ed. 2014)).

demonstrate that the state trial court unreasonably found Worthington's assurances of impartiality credible or that the state supreme court's decision resulted in an unreasonable application of *Yount* or *Witt*.

Worthington's voir dire raises serious concerns as to her ability to remain impartial. First, Worthington responded to the state trial court's invitation for those with "personal problem[s] with regard to jury service" to come forward. R. 189-14 (Voir Dire Tr. at 130–45). She stated that her brother was murdered, *id.* at 141–42, which is important because Allen was on trial for murder. The trial court elicited more information from Worthington about her experience with this tragedy, which should have deepened concerns. In response to the state trial court's question whether she could be fair and impartial, she gave an ambiguous and equivocal answer that "[y]es," she could be impartial "[b]ecause the prosecution did everything that they could" in the trial for her brother's murder. *Id.* at 452. Already, Worthington had indicated that she had a problem with serving on the jury, her personal circumstances mirrored the events giving rise to Allen's trial, and she gave only equivocal assurances of impartiality.

She subsequently gave assurances as to her ability to be fair and impartial, *id.* at 455–56, 460, but we must also ask whether the trial court should have believed her. *Yount*, 467 U.S. at 1036; *Wolfe v. Brigano*, 232 F.3d 499, 503 (6th Cir. 2000) ("In the absence of an affirmative *and believable* statement that [individual] jurors could set aside their opinions and decide the case on the evidence and in accordance with the law, the failure to dismiss them was unreasonable." (emphasis added)). To determine whether the trial court should have believed a juror, we look at the entire voir dire. *Hughes v. United States*, 258 F.3d 453, 459 (6th Cir. 2001) (explaining that courts do so because "jurors are reluctant to admit actual bias."); *Miller*, 269 F.3d at 618–19 (explaining that a state court will not "be faulted for not disqualifying for cause a juror who consistently says that she thinks she can be fair," but only after "[t]aking the [juror's] statements in context with the other statements made . . . during *voir dire*"). We also ask whether the juror's circumstances are "'extreme' or 'exceptional'" such that they demonstrate "the 'potential for substantial emotional involvement, adversely affecting impartiality.'" *United States v. Frost*,

125 F.3d 346, 379–80 (6th Cir. 1997) (citations omitted).**[7]** Therefore, we must consider Worthington's voir dire in its entirety to determine whether the state court should have believed her assurances and whether Allen has rebutted the state court's credibility determination with clear and convincing evidence. If we fail to undertake this endeavor, we fail to provide constitutionally adequate judicial review.

The majority cabins itself to Worthington's later assurances without considering any of the other concerning information that Worthington's voir dire responses offered. *See* Majority Op. at 8–9.**[8]** In addition to coming forward in response to the state trial court's question whether any potential juror had a personal problem serving on the jury, Worthington stated that she was present every day of the trial for her brother's murder; she agreed that justice was not done and that she was bitter and resentful "[b]ecause [the defendant] was found not guilty." R. 189-15 (Voir Dire Tr. at 451–52). She also admitted to having anxiety about Allen's case because of her brother's murder and the subsequent trial. *Id.* at 460. She noted that the detectives from her brother's case continued to check up on her mother, to whom she is close. *Id.* at 453–54, 461–62. Worthington also stated that she could not say if she would be able to hold back her emotions at Allen's trial

---

**[7]**This court has examined implied or presumed juror bias on habeas review before. *See, e.g.*, *Miller*, 269 F.3d 618; *Quintero v. Bell*, 256 F.3d 409, 413 (6th Cir. 2001) (granting habeas relief and concluding that the doctrine of implied bias predated the petitioner's 1989 petition and so *Teague v. Lane*, 489 U.S. 288 (1989), was no bar to relief), *cert. granted, vacated on other grounds, and remanded, Bell v. Quintero*, 535 U.S. 1109 (2002), *judgment reinstated*, *Quintero v. Bell*, 368 F.3d 892, 893 (6th Cir. 2004) (Mem.), *cert. denied, Bell v. Quintero*, 544 U.S. 936 (2005); *Wolfe*, 232 F.3d at 502–03. *But see Johnson v. Luoma*, 425 F.3d 318, 325–27 (6th Cir. 2005) (failing to address these cases).

The Supreme Court has held that juror bias "may be actual or implied," *United States v. Wood*, 299 U.S. 123, 133 (1936), and no subsequent Supreme Court decision has eroded this holding. *See Smith v. Phillips*, 455 U.S. 209, 223 (1982) (O'Connor, J., concurring) (concurring on the grounds that "the [majority] opinion does not foreclose the use of 'implied bias' in appropriate circumstances"); *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556–57 (1984) (Blackmun, Stevens, and O'Connor, JJ., concurring); *id.* at 558, (Brennan and Marshall, JJ., concurring in the judgment). Other circuits have continued to recognize the vitality of the implied bias doctrine on habeas review. *See, e.g.*, *Sanders v. Norris*, 529 F.3d 787, 791–92 (8th Cir. 2008) (noting conflicting circuit case law); *Brooks v. Dretke*, 444 F.3d 328, 329 (5th Cir. 2006); *Conaway v. Polk*, 453 F.3d 567, 587 (4th Cir. 2006).

**[8]**The majority relies on *White v. Mitchell*, 431 F.3d 517 (6th Cir 2005), to distinguish Allen's case, Majority Op. at 8–9, but *White* is of little assistance. In *White*, we focused on *Yount'*s second inquiry, concluding that the juror was biased, but we did not need to look beyond the juror's assurances as to her impartiality to reach this conclusion. *See White*, 431 F.3d at 541–42. The juror's assurances were contradictory and equivocal, and she stated that she thought that the defendant should be punished, she would like to be a part of the jury that imposed the death penalty, and the outcome would be a guilty verdict. *Id.* It is undisputed that Worthington's responses are not as alarming as the juror's in *White*. However, this does not mean that we do not scrutinize the voir dire transcript beyond Worthington's assurances of impartiality to determine, pursuant to *Yount*, if the state court unreasonably believed her.

when the same expert witnesses testified about the same type of evidence as in the trial for her brother's murder because she felt that the trial for her brother's murder "had just happened" and was "too close." *Id.* at 458–59. Worthington's voir dire indicated that her brother's murder and the subsequent trial remained at the forefront of her mind and that she possessed a heightened degree of emotion about Allen's trial for this reason.

This context is troubling, but only in "extreme" or "exceptional" situations regarding a juror's personal circumstances, *Frost*, 125 F.3d at 379, have we granted habeas relief on the basis of juror bias. Typically, a juror's circumstances raise doubts as to the juror's credibility when the juror has a close personal relationship with those involved in the defendant's trial, such as a friendship with the victim's family, *see Wolfe*, 232 F.3d at 502–03 (indicating that the juror was friends with the victim's family and knew the family's theory of the victim's death); *cf. Miller*, 269 F.3d at 611–12, 616–17 (determining that counsel was not ineffective for failing to challenge a juror for bias when the juror was the welfare caseworker for the victim's mother); or has significant knowledge of some aspect of the defendant's trial, *see Quintero*, 256 F.3d at 413 (presuming bias when seven of the jurors for petitioner's escape trial had served as jurors for his co-escapees' trials and convicted them and when neither the lawyers nor the court asked the jurors questions about this); *cf. Miller*, 269 F.3d at 616–17 (determining that counsel was not ineffective for failing to challenge a juror for bias when the juror did not have "extensive or detailed knowledge" about the case). Worthington did not have a close personal relationship with anyone involved in Allen's trial, nor did she have any knowledge of an aspect of his trial.[9]

For these reasons, Allen has failed to satisfy either § 2254(d)(1) or § 2254(d)(2). He has not pointed to enough evidence to rebut with clear and convincing evidence the state trial court's credibility determination of Worthington, which is afforded special deference. Nor has he demonstrated that the state supreme court's "decision to reject his claim 'was so lacking in

---

[9]On direct review, some federal courts have determined that a "juror's equivocal statements regarding her ability to be impartial, coupled with 'the similarity between her traumatic familial experience and the defendant's alleged conduct,' warranted reversal of the defendant's conviction 'under either an express or implied bias theory.'" *United States v. Mitchell*, 568 F.3d 1147, 1152 (9th Cir. 2009) (quoting *United States v. Gonzalez*, 214 F.3d 1109, 1114 (9th Cir. 2000)). Although Worthington's experience has similarities with Allen's alleged conduct, her subsequent statements were not equivocal. *Cf. Gonzalez*, 214 F.3d 1113 (explaining that the juror never gave an unequivocal response). In any case, we are sitting in habeas review.

justification that there was an error well understood and comprehended in existing law *beyond any possibility* for fairminded disagreement.'" *Davis v. Ayala*, 135 S. Ct. 2187, 2199 (2015) (emphasis added) (quoting *Richter*, 562 U.S. at 103). Therefore, under the law as it exists today, I cannot conclude that state supreme court's decision resulted in an unreasonable application of *Yount* and *Witt*.

Allen's case is close, however, even on habeas review. The dissent for three of the seven state supreme court justices in Allen's appeal to the Ohio Supreme Court demonstrates as much:

> I do not see how any fair-minded individual can suggest that Ms. Worthington did not indicate a state of mind and view that cast the most serious sort of question on her ability to render an impartial verdict. . . . While it is true that the state made every effort to extract a statement to the effect that this juror believed herself capable of rendering an impartial verdict, I cannot think of a situation similar to this where this court or any other court has indicated that a juror with experience and perspective similar to Ms. Worthington should not have been excused for cause.

*Allen*, 653 N.E.2d at 692 (Wright, J., dissenting). On direct review, I would reverse the trial court.

At the same time, "'even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review,' and 'does not by definition preclude relief.'" *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015) (quoting *Miller-El*, 537 U.S. at 340). Accordingly, courts cannot point to the deference given to a trial court's juror-credibility determinations and fail to undertake the other necessary part of its review—here, the second inquiry in *Yount*: should the juror's assurances have been believed. 467 U.S. at 1036. In Allen's case, this required plumbing the voir dire transcript beyond Worthington's assurances that she could be fair and impartial. After the full inquiry required by *Yount*, I concur in the judgment only.